Claude Bradley v. State Compensation Commissioner

(No. 6941)

Submitted January 20, 1931.   Decided February 10, 1931.

*Roderick G. Merrick,* and *Titsworth & Titsworth,* for appellant.

*H. B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondent.

LITZ, PRESIDENT:

Claude Bradley, unmarried, colored World War veteran, while engaged as a coal loader for the Buffalo-Eagle Mines, Inc., at Braeholm, Logan County, March 8, 1929, sustained an injury from powder explosion resulting in the removal of one eye and practically total blindness to the other.

On January 29, 1930, the compensation commissioner, after an ex parte investigation, denied the claimant compensation on the ground that he was at the time of the injury using a short fuse in violation of the mining laws of West Virginia. Upon a hearing, demanded by the claimant under section 43, chapter 71 of the Acts of 1929, the commissioner, by order of September 29, 1930, adhered to his former ruling. Section 63, chapter 88, Acts 1925, provides: "Every blasting hole shall be tamped, * * * full from the explosive to the mouth, and no coal dust or inflammable material shall be used for tamping. * * * No *fuses* shall be used unless permission is granted by the mine foreman and in *no case shall fuses be used of less length than the drill hole.*" Section 28, chapter 15-P, Code 1923, in part, follows: "Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee shall be entitled to receive any sum from the workmen's compensation fund, or to direct compensation from any employer making the election and receiving the permission mentioned in section fifty-four hereof, or otherwise under the provisions of this act, on account of any personal injury to or death of any employee caused by a *self-inflicted injury, the willful misconduct, or disobedience to such rules and regulations as may be adopted by the employer and approved by the commissioner,* and which rules and regulations have been and are kept posted in a conspicuous place in and about the work * * *." It is not claimed that the injury was self-inflicted. Nor is there any proof that it was caused by

disobedience to any rules or regulations "adopted by the employer and approved by the commissioner" which were kept posted in a conspicuous place about the work. Was he guilty of willful misconduct? If so, it consisted in his use of short fuse in violation of the statute.

Assuming that such act of a miner (as held in *Venelli* v. *State Compensation Commissioner,* 107 W. Va. 544), precludes him from compensation for resulting injuries, does the evidence in this case warrant the commissioner's finding of fact? Bradley was alone at the time of the accident. The room in which he was working was eighteen feet wide, thirty feet long and four and one-half feet high. A shot in the center of the face and one in each rib were required to break the coal sufficiently for loading. He had bored and shot the center hole; and after boring the hole in the left rib was, as he claims, in the course of preparing the shot when the explosion occurred. He says that he was using pellet powder (in sticks about one inch in diameter and eight inches long) and squibs to ignite it; that it required two and one-half sticks to shoot the hole, which was three feet from the floor and about three and one-half feet deep; that after inserting two, and while standing near the hole, he leaned to the left and picked up a tamping bar to shove the powder to the bottom of the hole and in straightening up the light on his cap came in contact with the powder. The employer vigorously contesting his right to compensation, contends that the circumstances disprove Bradley's story and establish the theory that the injury resulted from the use of short fuse.

The first circumstance relied on is the fact that the explosion caused a substantial disturbance of the coal. Thomas Combs, electrician for the mine owner, expresses the opinion that the explosion would not have produced this result had it occurred in the manner claimed by Bradley, without powder being tamped or backed up in some manner. This witness, however, in describing the process of using short fuses, says that the powder is first shoved to the bottom of the hole (as in other processes of shooting) and a "dummy" (piece of clay wrapped in paper) is then inserted as backing. All of the testimony on the question shows that the powder had

not reached the depth of the hole, so that no matter what method was being used, the explosion evidently occurred before the hole had been plugged. This is the view of some of the employees who accompanied the mine foreman to examine the working place of Bradley several hours after the accident. Moreover, the opinion of Combs assumes that both sticks of powder were as near the mouth of the hole as possible. The reasonable presumption is that the first stick was forced by the second to the point where it is claimed the greatest effect of the explosion was exerted.

The next circumstance relied on is that Bradley's cap and tamping bar were found ten or fiifteen feet from the face of the coal. This fact is without weight as tending either to disprove the claim of Bradley or establish the short fuse theory. The articles in question may have either been carried by the force of the explosion or fallen as Bradley was thrown back or turned to seek relief.

The last circumstance and one mainly relied upon is the alleged discovery several hours after the explosion of two short pieces of fuse, three dummies and some small pieces of paper at or near the points of the bore holes. The paper and fuses were introduced in evidence without accounting for the dummies. Combs and N. A. Mead, general mine foreman, testify that they, in company with Roosevelt Williams, Lee Clemens and Charlie Walker found these articles while examining the working place of Bradley two or three hours after the accident. Williams, who was not produced by the employer at the hearing, stated in an affidavit secured by an inspector of the compensation department, July 9, 1929, that they found two short pieces of fuse, without mentioning the "dummies" or paper. Mead and Ray Taylor, assistant mine foreman, in a joint written statement of the same date stated that "two small pieces of fuse and three dummies" were found; but did not refer to the pieces of paper which Mead and Combs now suggest had been used as "dummy" wrapping. Taylor, who testified as a witness for the employer at the hearing, admitted that he knew nothing of the finding of fuses or other articles in the working place of Bradley, and that he signed the statement merely because he had been re-

quested to do so. There is also filed in the case a purported joint affidavit by Drs. L. W. Lawson and V. E. Holcombe of the Lawson-Hatfield Hospital at Logan, where Bradley was treated from the time of the injury until May 17, 1929, stating that his right eye "was found to be all right." The fact is that the vision of the right eye has been so defective since the accident that Bradley is unable to distinguish light from darkness except on bright days.

The claimant was taken from the hospital in Logan to his father's home in Rushville, Indiana, May 17, 1929. On the 24th of the same month the employer wrote the compensation commissioner that it had that day received a request from a firm of lawyers in Rushville, Indiana, for compensation blanks to be filled out by Bradley; that his injury "was the result of his using short fuse and tamping up the hole;" that it had sworn out a warrant before C. W. Cook, a justice of the peace, charging that Bradley had thereby violated the mining laws, and requesting that it be notified when he returned to the state for a hearing on his claim in order that the warrant might be served upon him. Why the anxiety to prosecute a blind, helpless man? On the 17th day of June, 1929, Boyd B. Stutler, adjutant of the American Legion Department of West Virginia, who had become interested through the American Legion of Rushville, Indiana, wrote C. W. Cook, justice of the peace, inquiring as to whether or not he had issued a warrant for Bradley, and if so, the nature of the offense with which he was charged. To this letter Cook promptly replied that he had no record of having issued any warrant for Bradley. On July 9th, Cook made an affidavit before an inspector of the compensation department that he had issued a warrant for Bradley, who had "slipped away from the hospital" before it could be served on him. Titsworth & Titsworth of Rushville, Indiana, as counsel for Bradley, wrote the compensation department July 3, 1929, concerning the purpose of the employer to prosecute Bradley for the alleged violation of the mining laws: "The man is in a pitiable condition, has lost both his eyes and is helpless and dependent upon his parents for support, who are very poor people. We do not want him arrested and thrown in jail, to

add to his other injuries. We are doing gratuitously what we do, out of respect to the family." The willingness of attorneys, as here expressed, to render service without charge in behalf of such unfortunate workmen, who are easy prey for over-reaching lawyers, is deserving of the highest commendation.

In view of the time that had elapsed after the accident before the examination of the working place, the inconsistencies in the evidence of those claiming to have made the investigation, and other circumstances casting doubt upon the alleged discoveries, we are of opinion that the employer has not carried the burden of disproving the story of the claimant, and establishing the theory that the injury resulted from his use of short fuse.

The finding of the commissioner is, therefore, reversed.

*Reversed.*