OTIE PRINCE, *Widow etc. v.* COMPENSATION COMMISSIONER
*et al.*

(No. 9143)

Submitted February 4, 1941. Decided February 25, 1941.

*J. W. Maxwell,* for appellant.
*Hillis Townsend,* for appellee.

LOVINS, JUDGE:

The State Compensation Commissioner awarded death benefits to the widow of W. K. Prince. An appeal was taken to the State Compensation Appeal Board by the

employer, and the finding of the Commissioner was affirmed, from which action of the Board the employer appealed.

Prince, a coal cutting machine operator for the C. H. Mead Coal Company, a subscriber to the Workmen's Compensation Fund, was killed by a fall of slate occurring on October 3, 1939. The employer had certain rules regarding the setting of props and timber, which rules had been amended a short time before Prince was killed. It does not appear that the amendment had been approved by the State Compensation Commissioner. The amendment follows:

"Machine men will set safety post on right as soon as machine cuts beyond that point. Also as many more as necessary to make the place safe."

Prince went to the place where he was killed in company with his helper, A. D. Lilly. Before the cutting machine was unloaded, the top was examined. Lilly says he told Prince that the roof was "loose or heavy," and that Prince said, "Maybe we can cut it." The machine was unloaded, and after having cut about six feet Lilly says he noticed that the slate was giving down from the main roof, and small particles were falling. Lilly also says that he shut down the machine and began to watch a piece of slate, and made some other comments, to which Prince replied that he had been there fifteen years and that this helper could not tell him anything about the top. He then told Lilly to start the machine, and had cut about two feet more, when the slate fell. It is further shown that under the rules and practice at this mine, machine operators determined the safety or danger in working conditions, in the absence of section foremen.

The employer invokes the provisions of Code, 23-4-2, as amended by Chapter 104, Acts of the Legislature, 1937, to defeat this claim for death benefits, and contends that decedent was guilty of willful misconduct in that Prince did not set safety posts as required by the amended rule hereinabove quoted, and that he violated the provisions of Code, 22-2-32, 59 and 60, wherein certain safety measures are required.

The Workmen's Compensation Law was enacted for salutary purposes. It is proper that employers should be called upon, in accordance with its provisions and meaning, to pay indemnity for accidents involving the loss of life or injury to persons in their employ, as employers are protected from burdensome litigation by its provisions. The law must be given a liberal construction to accomplish the purpose and intent. *McVey* v. *C. & P. Telephone Co.* 103 W. Va. 519, 138 S. E. 97.

As stated, an examination of the record fails to show that the amended rule of the employer had been approved by the Compensation Commissioner. Such approval is obviously necessary before a violation thereof, without more, can be successfully invoked to defeat a claim for compensation. Code, 23-4-2. Sections 32, 59 and 60, article 2, chapter 22, Code, refer to the examination and timbering of the roof. Willful violation by an employee of a statute designed for his protection is willful misconduct under Code, 23-4-2. *Carbon Fuel Co.* v. *Comp. Com'r.*, 112 W. Va. 203, 164 S. E. 27. However, before such a violation can be asserted as a bar to benefits under the Compensation Law, it must be shown that the employee had actual notice thereof and disregarded the same. *Carbon Fuel Co.* v. *Comp. Com'r., supra; King* v. *Empire Collieries Co.*, 148 Va. 585, 139 S. E. 478, 58 L. R. A. 193. No such showing appears in this record. Furthermore, the statute under consideration in *Carbon Fuel Co.* v. *Comp. Com'r., supra*, prohibited the employee from doing a specific act, while sections 32, 59 and 60, referred to above, leave room for the exercise of judgment on the part of the employee.

It is argued that the conduct of Prince just before his death amounted to willful misconduct in that Prince must have known, as an intelligent and experienced miner, that he was engaging in a dangerous practice; that he knew that the practice was disapproved by his helper; and because of the admonition given to him by the mine foreman and company officials urging him to set posts as required by the rules of the company. The case of *Red Jacket Consolidated Coal Co.* v. *Compen-*

*sation Commissioner,* 111 W. Va. 425, 162 S. E. 665, is cited in support of this argument. In that case, it appears that the employee was killed by using "short fuses" and by undertaking to set off more than one shot at a time. He had been threatened by the mine foreman with discharge because he was using short fuses, and had also been fined by a local "safety club" for the same offense. No such facts appear herein. The situation in which Prince found himself called for the exercise of his judgment as to the danger or safety of the roof, and his judgment was different from that of his helper, Lilly. Furthermore, it is clear that the judgment of Prince was bad, and his action negligent, but does the mere exercise of bad judgment and negligent conduct pursuant thereto constitute willful misconduct? We answer this question in the negative. *Bradley* v. *Compensation Commissioner,* 110 W. Va. 89, 157 S. E. 42.

"Willful misconduct" has been variously defined in opinions dealing with facts similar to those established in this case. In *Glass* v. *Sullivan,* 170 Tenn. 230, 94 S. W. (2d) 381, it is said that willful misconduct means more than negligence and carries the idea of deliberation and intentional wrongdoing. "Willful misconduct includes all conscious or intentional violations of definite law or rules of conduct, as distinguished from inadvertent, unconscious, or involuntary violations." *Aetna Life Ins. Co.* v. *Carroll,* 169 Ga. 333, 150 S. E. 208. See generally, *Tyree* v. *Commonwealth,* 164 Va. 218, 179 S. E. 297; *Sloss-Sheffield Steel & Iron Co.* v. *Greer,* 216 Ala. 267, 113 So. 271.

The Compensation Commissioner and the Workmen's Compensation Appeal Board are fact-finding agencies. The order of the board affirming the finding of the Commissioner will not be reversed on appeal, unless it is clearly wrong.

In accordance with the foregoing principles, we affirm the finding of the Workmen's Compensation Appeal Board.

*Affirmed.*

Fox, JUDGE, dissenting:

With much of the opinion of the majority I am in full accord, and while the two points of the syllabus state correct principles of law, they do not cover 'the points of my dissent from the result. Specifically, I agree that the findings of the Compensation Commissioner and Appeal Board are entitled to great weight and should not be disturbed unless plainly wrong; I concede that under Code, 23-4-2, to deny compensation on account of violation of rules there must be strict compliance with the statutory provisions respecting their approval by the Compensation Commissioner and the posting thereof in a conspicuous place in and about the works; I admit that a person charged with having willfully violated a statute enacted for his protection must be shown to have had knowledge of its provisions; and, last of all, I am fully in accord with the repeated holdings of this Court that a liberal construction of the compensation statutes, in favor of the injured, should at all times prevail.

This case is governed by Code, 23-4-2, the pertinent provisions of which read:

> "* * * no employee or dependent of any employee shall be entitled to receive any sum from the workmen's compensation fund, * * * on account of any personal injury to or death of any employee caused by a self-inflicted injury, wilful misconduct, wilful disobedience to such rules and regulations as may be adopted by the employer and approved by the commissioner, and which rules and regulations have been and are kept posted in conspicuous places in and about the work, or the intoxication of such employee, or the failure of such employee to use or make use of any protective or safety appliance or appliances prescribed by the commissioner and furnished by the employer for the use of or applicable to such employee."

It will be noted that willful misconduct stands out from the other acts which bar compensation. Willful violation of rules will operate as a bar only where such rules have been promulgated by the employer, approved by the

compensation commissioner, and posted and kept posted in conspicuous places in and about the work; but one may be guilty of willful misconduct independently of any rule or statute. For example, the statute bars compensation in case of self-inflicted injury, and any act which an employee can see is calculated to result in injury is an act of willful misconduct. The only distinction between self-inflicted injury and willful misconduct is that in one case the injury is the result of a deliberate act of the party, whereas in the other he ordinarily places himself in position to receive the injury through other agencies. The distinction is narrow and unimportant so far as results are concerned.

But what was the misconduct of the employee in this case? The record shows that an inspection of the employer's mine by the Department of mines had disclosed a dangerous roof, and that steps had been taken to reduce the danger. The Department and the employer attempted to cooperate. There was an amendment to the working rules, and instructions were given to the machine men, of whom the deceased was one. While the amendment to the rules containing these instructions had not been approved by the Compensation Commissioner, the rules, as amended, had been posted and kept posted as required by the statute, a copy given to the deceased, there is the evidence of the mine foreman, Shrewsberry, that he had actual notice thereof, and was, therefore, fully acquainted with the steps which had been taken by the mine department and his employer to protect him, as well as all other persons working in the mine. The fact that he had such knowledge bears only on the question of willful misconduct.

The deceased knew the mine. He was an experienced miner. He, himself, said so. Repudiating any suggestion of his helper, he was willing to take the risk of danger and his death resulted from his own order to his helper, after he had been warned of the danger. Just how did he die? The witness Lilly tells the pathetic story of the result of one man's willfulness. He was working with the deceased on the morning of his death and warned him that

the slate overhanging the working place was loose. He stated to him that he had examined the slate. He then makes this statement:

"When we first pulled in the place, and before we unloaded the machine, I examined the top and told him that it was loose, or heavy. He says, 'Maybe we can cut it', and we went ahead and unloaded the machine and started to cutting. After it had cut about six feet I noticed the slate was giving down from the main roof. It was draw slate, and I saw the small particles falling from the edge of the slip, and I shut off the machine and said to him, 'Kelly, watch this piece of slate, it is as bad as Jesse James.'" His reply was, "'I have been here fifteen years and you cannot tell me anything about this top, and besides, you don't know bad top.' He then said, 'Turn her loose,' meaning to start the machine, which I did, and the machine had cut about two feet when the slate fell on him."

I am willing to adopt the definition of willful misconduct quoted in the majority opinion, which is: "Willful misconduct includes all conscious or intentional violations of definite law or rules of conduct, as distinguished from inadvertent, unconscious or involuntary violations." I ask what was "inadvertent," "unconscious," or "involuntary" in the conduct of the deceased? On the other hand, I contend that what he did was voluntary, conscious, and intentional.

It will not do to say that the act of the deceased employee was an error of judgment, or mere negligent conduct, neither of which would bar compensation. It was much more than that. It was the act of an experienced man disregarding every precaution taken for his benefit by the public authorities of the state and by his employer, and heedless of express warning by his helper immediately before he gave the order which caused his death. If this was not misconduct, I would not know how to define it; and if not willful, all definitions of that word will have to be revised. Under the holdings of the majority the way will always be open to claim error of

judgment, as distinguished from willful misconduct, and, in most cases, the claim would be an honest one for the reason that even though misconduct is willful, the guilty rarely thinks anything harmful will result therefrom. If he did think so, his injury would to all practical intents and purposes be self-inflicted.

This is not a new question with this Court. In *Red Jacket Consolidated Coal & Coke Company* v. *Compensation Commissioner*, 111 W. Va. 425, 162 S. E. 665, it was held that, "Where an employee in the course of his employment engages in willful misconduct which results in fatal injury to him, his dependents are not entitled to compensation under the Workmen's Compensation Law," citing Code, 23-4-2. In that case a coal loader used short fuses, a practice condemned. The fact that the deceased in that case was an intelligent and experienced miner, and that the practice was dangerous, that it was a practice disapproved and condemned and of which admonition had been given to him by the mine foreman, were all considered as evidence of willful misconduct, and it was there stated that, "An employee who takes 'short cuts' involving dangerous practices, known to him to be dangerous and to be disapproved by his fellow workmen because of the danger, and in express violation of the instructions of his foreman, assumes entire responsibility as to what may happen to him as a result of such improper practices."

In *Carbon Fuel Co.* v. *Compensation Commissioner*, 112 W. Va. 203, 164 S. E. 27, it was held that the violation by an employee of a statute designed for his protection is willful misconduct. In the case at bar the employee did violate a statute, Code, 22-2-59, which requires, "Every miner shall thoroughly examine the roof and general conditions of his working place before commencing work, and if he finds loose rock or other dangerous conditions, he shall not commence work in such place until it has been made safe, or unless it be for the purpose of making such place safe." It may be that the employee did not know of this statute, but he knew that the practice which the statute was intended to guard against had been in-

corporated, in effect, into the amended rule of which he did have notice. Therefore, it follows that if the violation of the statute, if known, would have been willful misconduct, the violation of the same provision, in the form of a rule, is likewise willful misconduct.

I cannot reconcile the majority opinion in this case with the two cases above referred to. I regard the effect of this decision as one which will seriously hamper the enforcement of rules and statutes designed for the safety of workers in industry in this state, particularly in the mines.

Men of good will everywhere are concerned over the frightful toll which modern industry takes in the form of death and bodily injury, and this is particularly true in the mining industry in this state and elsewhere. Our state maintains, at great expense, a department the duties of which embrace the inspection of mines, and the promulgation of rules calculated to provide for their safe operation. The provisions of statutory law prohibit certain acts by both employer and employee, and definite safety requirements are provided for. Tending to support this safety policy, certain provisions are incorporated in the workmen's compensation statutes which bar compensation under certain conditions. The one we here deal with is Code, 23-4-2. Continued efforts are being made by the state, and by the federal government as well, to render less dangerous the work of producing coal, and these efforts have universal approval and support. This being true, what should be the attitude of courts in enforcing these statutes and rules? I contend that we should endeavor to make effective such statutes as the legislature in its wisdom has enacted, and all rules which may be promulgated by employers and others in connection therewith; and that we should carry into effect the intent of the legislature in that regard. Here we have a case where every effort of the Department of Mines and the employer to save lives and guard against accidents were rendered futile by the willful refusal of one man to obey a rule promulgated for his safety, and of which rule he had actual notice, and his failure to heed a warn-

ing against an obvious danger. If under such conditions compensation be awarded for his death, of what force is the statute, and what becomes of the legislative intent to require cooperation between employer and employee with respect to safety measures? The deterrent effect of the statute is lost sight of and the liberal and benevolent impulse of the moment is allowed to overcome the true intent and purpose of the lawmakers. Favoring, as I do, the adoption of every possible safety measure which can be practically applied, I feel impelled to support the power of the legislature and the administrative boards and commissions which seek to enforce these rules. In passing, let me say that rules can be enforced only through discipline and by imposing the penalties and burdens which go along with the refusal to obey.

In the case at bar, the mine was found to be unsafe; the Department of Mines required that certain steps be taken by the owner in an effort to make it a safe place in which to work; the owner complied with these requirements by an amendment of its working rules, of which the deceased had actual notice; in addition to this, the immediate danger was pointed out to him by his helper; yet, in spite of all these measures taken for his protection, he purposely took an obvious risk and lost his life through his willfulness. Under such circumstances, as Judge Maxwell said in the *Red Jacket* case, "It would be harsh indeed to impose liability on an employer in such circumstances." But a stronger objection is that the majority opinion, in my judgment, practically nullifies the force of the statute which makes willful misconduct a bar to compensation, and thereby palsies the hands of those who are striving for safer conditions for workers in industry.

I would reverse the ruling of the Compensation Appeal Board and deny compensation.