Red Jacket Consolidated Coal and Coke Company, Inc. *v.* State Compensation Commissioner *et al.*

(No. 7155).

Submitted January 13, 1932.    Decided January 19, 1932.

426

*Goodykoontz & Slaven,* for appellant.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for Compensation Com'r.

*Carlos Berguido, Jr.,* and *England & Ritchie,* for dependents of Jose Pillado Garcia.

MAXWELL, JUDGE:

Jose Pillado Garcia was killed in Mingo County in a mine of the Red Jacket Consolidated Coal & Coke Company April 29, 1930, while engaged in his duties as a coal loader for said company. Compensation was awarded his dependents and the company appeals.

In support of its challenge of this award the appellant takes the position that at the time of his fatal injury Garcia was guilty of violation of the mining laws of the state and of the rules of the company, and that his manner of procedure was willful misconduct. All of which elements arose because, it is said, at the time of his death, which was caused by explosion, Garcia was undertaking to set off more than one shot at a time and was using "short fuses."

Garcia was working alone in a room in the mine where the face of the coal was about eight feet wide. After shooting down and removing the coal which had been last undercut by the undercutting machine, there remained on the bottom of the mine, underneath the cut that had been made by the machine, a layer of coal from one to six inches in thickness. At the time of the fatal injury Garcia was engaged in loosening this bottom in preparation for its removal. Following accepted mining practice he was using an explosive, monobel, which is a powder composition used extensively in coal mining.

In removing bottom, commonly called "doby mining," holes are dug in the bottom with a pick and the explosive placed therein with a fuse extending therefrom. Some packing, coal or other material, is placed over the explosive and the same is fired with the fuse. When Garcia's dead body was found, some three or four hours after the last shot had been heard in the room where he was working, it was discovered that his hands had been blown off and that his face and head were terribly mutilated. Three shots had been fired in the section of bottom where he was working, and a fourth shot, the one on the extreme left, had not been exploded. The fuse of the unexploded shot had not been lighted. The fuse in this shot was about twelve inches long. A piece of fuse about eleven inches long was found in the pocket of the dead man, and two pieces of burnt fuse about eight inches long were found on the floor.

It is, of course, speculative as to the exact manner in which Garcia met his death. A miner in a neighboring room heard two shots almost together, a light explosion followed by a heavey one. A third explosion is unaccounted for unless it was simultaneous with one or the other of the two shots heard by the neighboring miner. It cannot be said that the three shots were all fired by Garcia at the time of his accident (one may have been put off earlier), nor that the two which were heard by the other miner had been voluntarily fired (nearly simultaneously) by Garcia. He may have intentionally fired the first one, and the second have occurred through accident. Compensation could not therefore be denied on the ground that he was firing more than one shot at the time, even if the statute inhibiting that practice were construed as applying to "doby mining."

Garcia was in the habit of using very short fuses in his "doby mining." About six months before his death the "safety club," an organization of the miners employed in the mine where Garcia was killed, imposed upon him a fine of one dollar for using short fuses in "doby mining." A fellow workman had observed him using short fuses and had reported him to the club. Following that incident the mine foreman proposed to discharge Garcia, and in fact told him

to pack his tools and get out, because of his using short fuses, but Garcia persuaded the foreman to permit him to remain under the promise that he would not further engage in that practice. The foreman then told him that if he thereafter used fuses less than twenty-four inches in length, he would discharge him. This interview was held in Garcia's working place in the mine, and at the time thereof the foreman found there a number of short pieces of fuse which he then threw into a water hole so they could not be used. The thing that occasioned the interview was the action of the safety club and the conduct of Garcia which had given rise to such action. The whole setting of the affair indicates that the foreman was talking about short fuses in "doby mining" and not about fuses used in shooting down coal. Elsewhere in his testimony the foreman makes clear the distinction between fuses used by the coal shooters and fuses used in shooting bottom. He testified: "The coal shooters do not shoot any less than from 4½ to 6 feet long and the shortest fuse for shooting bottom is 24 inches * * *."

A fellow miner testified that frequently when in the room where Garcia was working he observed short fuses which Garcia had cut apparently for use in blasting bottom, and that Garcia had used short fuses every time he had seen him "fix the shots."

It is provided in our Workmen's Compensation Statute that compensation shall not be awarded "on account of any personal injury to or death of any employee caused by a self-inflicted injury, willful misconduct, disobedience to such rules and regulations as may be adopted by the employer and approved by the commissioner, and which rules and regulations have been and are kept posted in conspicuous places in and about the work, or the intoxiciation of such employee, or the failure of such employee to use or make use of any protective or safety appliance or appliances prescribed by the commissioner and furnished by the employer for the use of or applicable to such employee." Code 1931, 23-4-2. There is no contention that Garcia committed suicide, or that he was intoxicated, or that he failed to use any safety appliance which had been provided for his use.

He was not guilty, as asserted and contended by the employer (appellant), of disobedience of any rule or regulation which had been adopted by the employer and approved by the commisioner, because the evidence fails to show that there were any such rules pertaining to the use of explosives in "doby mining," or removal of bottom. The company's rule No. 8, posted, covers the shooting down of coal after it has been undercut, but does not cover the removing of bottom.

In our mining statute there are inhibitions against the use of fuses of less length than the drill hole (Code, 22-2-64), and the firing of more than one shot at a time (Code, 22-2-65), but the context of the sections wherein these provisions are found indicate clearly that they pertain to shooting down coal and not to the more or less superficial explosive work in the removal of bottom. It must therefore be resolved that Garcia was not proceeding in violation of these particular statutory inhibitions at the time of his accident.

But was he engaged in "willful misconduct" as contemplated by the Workmen's Compensation Statute above mentioned and cited? We are constrained to answer that query in the affirmative. The above recited facts disclose his persistent use of short fuses in removing bottom notwithstanding (1) the knowledge which he must have had as an intelligent and experienced miner that it was a dangerous parctice; (2) he knew that it was a practice disapproved and condemned by his fellow miners as evidenced by the the action of the "safety club" in fining him for previous similar conduct; (3) the admonition which had been given him by the mine foreman not to use fuses shorter than twenty-four inches in length when blasting bottom.

An employee who takes "short cuts" involving dangerous practices, known to him to be dangerous and to be disapproved by his fellow workmen because of the danger, and in express violation of the instructions of his foremman, assumes entire responsibility as to what may happen to him as a result of such improper practices. Because of such willful misconduct an employee may not himself receive compensation if his injury is not fatal, nor are his dependents entitled to compensation if he incurs fatal injury. It would be harsh

indeed to impose liability on an employer in such circumstances.

In the light of the foregoing, we reverse the finding of the commissioner, disallow the claim, and dismiss the proceeding.

*Reversed; dismissed.*