H. H. YOUNG *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 9187)

Submitted April 15, 1941.   Decided May 13, 1941.

*Strother, Herndon & Berry,* for appellants.
*Hillis Townsend,* for appellee.

Fox, JUDGE:

H. H. Young, an employee of Crozer Coal and Coke Company suffered an injury from a slate fall while working in the mines of his employer on December 14, 1939. He was forty-nine years of age at the time, had worked in the mines of his employer for fifteen years, and in the mine in which he was injured for five or six years.   The circumstances connected with his injury are as follows:

The claimant Young and J. L. Baker were working together in coal which was ninety-one inches high.   Overlaying this coal was a layer of draw slate of an average thickness of eight inches.   Some time before the accident three holes had been drilled in the face of the coal in or-

der to shoot the same, and what is known as the "middle or center shot" had been fired, leaving two holes known as "rib shots" to be thereafter fired.

It is developed by the record that the practice is to fire the center shot, and then remove the coal which is loosened by that shot. Ordinarily, this provides a safe place to work, because the overlaying draw slate is held up by the coal on the right and left. After the coal dislocated by the center shot. is removed, and prior to the shooting of the rib shots, a mine post is usually set to hold up the slate, and company rule No. 7, claimed to have been approved by the compensation commissioner, and proved to have been posted in the mine, provides that, "A center prop is required in all places unless permission to omit same is granted by the foreman." After the center shot had been fired, and while Young and his helper, Baker, were removing the coal from the center, mine foreman Carnes and his assistant Blevins came into the room. Carnes, Blevins, and Baker all testify that Young was directed by Carnes to set a center post, which direction, presumably, was expected to be complied with after the coal loosened by the center shot had been removed. Young states that he did not hear this instruction. He also testifies that he could not read, and had never heard of the rule quoted above, nor of another rule, No. 11, which provides that "After a shot has been fired, the employee before starting work shall make a careful examination of the roof and coal as to their safety." After Carnes and Blevins left the room, and after Young and his helper had loaded the coal at the center, the rib shots were fired. The mine post had not been set, and shortly after that, while Young was removing coal loosened by the rib shots, the slate fell and he was injured.

Under these circumstances Young applied for compensation, and a temporary award was made to him on January 27, 1940. His employer objected to the award, a hearing was had, and the order awarding compensation was affirmed by the commissioner and later upheld by the appeal board. From the action of the appeal board, the employer prosecutes this appeal.

The objection to the award is based upon two propositions: (1) That the employee was guilty of willful misconduct within the meaning of Code, 23-4-2, and (2) that the employee was guilty of willful violation of the employer's safety rules within the meaning of the same section of the Code.

There is no direct proof in the record that the rules relied upon were approved by the compensation commissioner, although it is stated in brief of counsel that they were so approved. Counsel for claimant make no point of this omission in employer's case, and it seems clear that the rules were posted in the mine and a copy thereof is filed with the record. So we think we are justified in treating the case as one in which the rules in question were approved by the compensation commissioner, and were duly posted as required by law, leaving only the question of whether Young had actual notice of the rules. Code, 23-4-2, uses the word "wilful" in connection with misconduct and disobedience to rules and regulations, and the authorities seem to uphold the proposition that before one can willfully violate a statute or a rule he must first have knowledge of the same. Willfulness, implying premeditation and intent, must necessarily rest upon knowledge.

In *Carbon Fuel Company* v. *Compensation Commissioner*, 112 W. Va. 203, 164 S. E. 27, it was held that "Willful violation by an employee of a statute designed for his protection is willful misconduct under Code, 23-4-2, which forbids compensation for an injury caused by such misconduct." Code, 22-2-59 provides that "Every miner shall thoroughly examine the roof and general conditions of his working place before commencing work, and if he finds loose rock or other dangerous conditions, he shall not commence work in such place until it has been made safe, or unless it be for the purpose of making such place safe." And in Section 60 of the same Article, covering the supply and use of props, it is provided, "It shall be the duty of each miner to properly prop and secure his place in order to make the same secure for him to work therein." Claimant in his statement made to the examiner of the

compensation department, when asked, "Did you know it was the rules of the company and the state law to keep your place properly timbered and safe?", said, "Yes, sir, I think I did. I lacked about one timber where timber should have been." He was then asked, "Had you had a safety post set would the slate that injured you have fallen?", to which he answered, "I don't think it would."

We are here presented with a case where an experienced miner may reasonably be assumed to have known that center posts were required for his own protection. He states that he knew that the rules of the company and the state law required him to keep his working place properly timbered and safe. That was what the statute and the rules in question were designed to require, and it would seem unimportant whether he had read the actual language of either the statute or the rules. In addition to this we have the testimony of three men, against the denial of Young himself, that a short time before the accident he was told to do the very thing, which, as he says, would have prevented the accident, and this he failed to do. We do not think the compensation commissioner or the appeal board was warranted in disregarding the testimony of three men and accepting the statement of Young that he did not hear these instructions, when it clearly appears that he was in a position to have heard the instructions given and they were heard by others in the same vicinity. So we think we are not called upon to consider seriously either the question of willful misconduct or the more difficult question of whether the posting of legally promulgated rules operates, in law, as notice of their contents or whether actual notice of the existence of the contents of the rules must be brought home to the employee; but, as stated above, while willful misconduct growing out of a disobedience to law or rules must rest on knowledge thereof, men cannot close their eyes to their surroundings and say that they do not have knowledge of things which are, figuratively speaking, in plain view. The requirement of the statute which calls for the posting of notices was, we think, intended to mean something, and if in addition to posting of notices in mines and in

and about the premises the employer must go still farther and bring actual knowledge of the contents of these notices home to the employees, it is not difficult to conjecture the burden which would be imposed on the employer and the fund. Denial of knowledge of a rule would be easy; proof of such knowledge would, in most cases, be impossible.

Claimant contends that willful misconduct or willful disobedience of rules is not shown in this case, and insists that within the meaning of the statute wilfulness means more than mere negligence, carelessness, premeditation or intent, but must include an intent to do a wrongful act, and cites 71 C. J. 762, *King* v. *Empire Collieries Co.,* 148 Va. 585, 139 S. E. 478, 58 A. L. R. 193 in support of this contention. While it is true that a willful act, in most cases, may be said to be wrongful, we do not think that intent to do a wrongful act is a necessary element. Knowledge of the statute or rule promulgated and deliberate and intentional violation of either constitutes willful misconduct. *Riverside & Dan River Cotton Mills* v. *Thaxton,* 161 Va. 863, 172 S. E. 261; *Red Jacket Consolidated Coal & Coke Co.* v. *Compensation Commissioner,* 111 W. Va. 425, 162 S. E. 665; *Carbon Fuel Company* v. *Compensation Commissioner, supra.* The *Riverside* case discusses the case of *King* v. *Empire Collieries Co., supra,* and the prevailing rule in Virginia and in this state is that only knowledge, deliberation, and intent are necessary to establish willful misconduct or willful disobedience to rules. The danger to an employee or to his fellow workers, growing out of misconduct or a violation of rules, is just as real if it be without wrongful purpose, as it would be if accompanied by a vicious or criminal intent.

On the whole we think the evidence shows that the claimant in this case was fully acquainted with the statute and the rule governing his employment, and that he deliberately and intentionally violated both the statute and the rule, as well as the direct instruction of his superior.

Under these circumstances, the compensation commissioner and the appeal board were in error in awarding compensation, and their action in so doing will be reversed.

*Reversed.*