W. C. BILLINGS *v.* STATE COMPENSATION COMMISSIONER
*et al.*

(No. 9207)

Submitted September 9, 1941. Decided September 30, 1941.

*Sanders & Day,* for appellant.
*Hillis Townsend,* for appellee.

RILEY, JUDGE:

Turkey Gap Coal & Coke Company complains of an order of the Compensation Appeal Board affirming the Commissioner's award to W. C. Billings of a seventeen per cent permanent partial disability for the loss of two fingers and an injury to the thumb of his right hand.

The claim was resisted by the employer on the grounds that Billings was guilty of (1) wilful disobedience of safety rule No. 7, which provides, in part: "Cleaning sand pipes or sanding rails by hand while the motor or locomotive is in motion is prohibited"; and (2) wilful misconduct under Code, 23-4-2, in getting off his motor while it was running and walking beside it while unattended for the purpose of cleaning the sand pipes. Although no reasons were given by the Commissioner in making the award, the Appeal Board based its action on the grounds that claimant was not guilty of wilful violation of rules or wilful misconduct as contemplated by the statute.

On or about June 21, 1940, claimant, an experienced motorman, was operating a supply motor in appellant's Modoc mine. While pushing five mine cars, loaded with mine props, up a slight grade on a straight track about two hundred feet within the mine, the wheels of the motor began to spin. Claimant upon discovering that the operation of the sand levers failed to release the sand to the rails, got off the motor while it was running, and, leaving it unattended, took the top from one of the sand boxes and began knocking the sand pipes with it for the purpose of opening the same. In some unknown manner

his hand was caught under the wheels of the motor and the injury sustained. Claimant was alone at the time of the accident. The only light in the mine at the time and place was that carried on his cap.

Claimant went to work at Modoc mine about six o'clock on the evening of the accident. He first pulled some "clean-up" loads, and picked up four cars of rock which he dumped on the other side of the mountain. In unloading the rock he found that the sand pipes on the motor had become clogged. Next, he picked up some rails, brought them through the mine and unloaded them. He then went to the drift mouth of the Modoc mine for the purpose of loading mine props, which were located about fifty feet from the mine mouth. On the way he passed the sand house but did not put dry sand in the sand boxes. He and his helper, Clifton McKinney, then loaded five mine cars with props, and claimant, using his motor, pushed the cars into the mine, where he was injured.

The motor had four sand boxes, each being 6x8x18 inches. From the bottom of each a sand pipe extended toward the rail. This pipe was about three or four inches long, the opening at the lower end thereof being seven or eight inches from the wheel. In the event the flow of sand can not be controlled by use of the levers, the sand pipes may be cleaned either by knocking them with a hammer or other hard object, or inserting a wire or stick, neither of which should be undertaken while the motor is running.

Rule No. 7 was properly adopted by the employer, approved by the Compensation Commissioner, and was posted at various conspicuous places on employer's property. In fact, the record shows that printed copies of the rules were posted at the mine tipple and each drift mouth. The poster at the Modoc mine was in a glass case at the left of the mine entrance about five feet above the ground and about fifty feet from where claimant and his helper loaded the mine props.

There is evidence to the effect that the mine foremen instructed the employees not to clean sand pipes or to sand rails by hand while motors were in motion, and that

about two years prior to the time of the accident a pamphlet containing the mining laws and safety rules, including rule No. 7, had been given to the employees when they came to the office for their pay. However, no one testified that claimant was ever instructed as to the rule in question or that he actually received a copy of the rules. On the contrary he testified that he never received any instruction or a copy of the printed rules, and that though he saw the poster in the glass case at the mine mouth he never took occasion to read it.

This state of facts brings us to the question of whether, under the circumstances of this case, claimant was bound by the rule as to the cleaning of sand pipes and the sanding of rails by hand. He, of course, contends that having had no actual knowledge of the rule and never having been instructed as to it, its violation is not wilful within the meaning of the statute (Code, 23-4-2). The soundness of this position depends upon what is meant by the term "wilful" as applied to the violation of a safety rule. It does not, as this Court has held, mean wantonness or an intent to do wrong. *Young* v. *State Compensation Com'r.*, 123 W. Va. 299, 14 S. E. (2d) 774. The public policy underlying the statute providing for the promulgation and approval of safety rules lies in the protection of the lives and bodies of those employed in the mining industry. Every reasonable safety rule properly promulgated and approved should be enforced in any event where its enforcement does not do violence to a reasonable construction of the statute itself. Actual knowledge of a safety rule, we think, is unnecessary to make its violation bar compensation. On the contrary "* * * while wilful misconduct growing out of a disobedience to law or rules must rest on knowledge thereof, men cannot close their eyes to their surroundings and say that they do not have knowledge of things which are, figuratively speaking, in plain view. * * * if in addition to posting of notices in mines and in and about the premises the employer must * * * bring actual knowledge of the contents of these notices home to the employees, it is not difficult to conjecture the burden which would be imposed on the em-

ployer and the fund." *Young* v. *State Compensation Commissioner, supra.* Here the claimant worked daily in and about the Modoc mine entrance. Quite frequently, as on the evening in question, he worked within a short distance of the poster at the mine entrance which was in his plain view. He passed this poster daily in entering and leaving the mine. Under the circumstances he had ample opportunity to read it. Evidently he knew that it was there. If, in fact, he had no actual notice of the rule in question, it was because he refrained from taking and having such notice, and his violation thereof, we think, was wilful within the meaning of the statute and resulted in his injury.

But the employer further contends that claimant is barred because he was also guilty of wilful misconduct in leaving his motor running and unattended as he walked beside it in an attempt to loosen the sand. In this the employer is supported by the record. Claimant admitted that he was injured while walking beside the motor while it was running, and many witnesses testified, without substantial contradiction, that such conduct was dangerous. If this resulted in claimant's injury, it is wilful misconduct within the meaning of the statute, and such that without acquiescence on the part of the employer would bar compensation. However, wilful misconduct will not render the claim non-compensable unless the injury complained of results therefrom, and it matters not whether the misconduct was inhibited by rule or statute. See the following cases in which wilful misconduct has been held to bar compensation: *Venilli* v. *State Compensation Com'r.,* 107 W. Va. 544, 149 S. E. 612; *Red Jacket Consolidated Coal & Coke Co.* v. *State Compensation Com'r.,* 111 W. Va. 425, 162 S. E. 665; *Carbon Fuel Co.* v. *State Compensation Com'r.,* 112 W. Va. 203, 164 S. E. 27; *Edwards* v. *State Compensation Com'r.,* 112 W. Va. 504, 165 S. E. 669; *Young* v. *Compensation Com'r., supra.* We think that claimant's conduct in leaving his motor unattended while it was running, though wilful and dangerous as disclosed by this record, will not ground a bar to compensation. We say this because claimant's injury

ensued from the violation of rule No. 7 and not as a result of his walking beside the running motor.

From the foregoing it seems to us that this claim is barred because of claimant's violation of safety rule No. 7, unless the employer by a course of conduct has acquiesced in its violation. Under the Workmen's Compensation Law wilful misconduct or the wilful violation of a safety rule in the face of employer's acquiescence does not bar compensation. *McEwan* v. *State Compensation Com'r.*, 123 W. Va. 310, 14 S. E. (2d) 914; *Caldwell* v. *Workmen's Compensation Appeal Board*, 117 W. Va. 706, 188 S. E. 122. This question, as the order of the Appeal Board discloses, was neither considered nor determined by the Board, and the record here does not clearly disclose that the employer actually acquiesced in claimant's violation of the rule. A number of employer's witnesses testified to an almost constant effort on the part of its foremen and their assistants to enforce the safety rules and the mining laws. On the other hand, however, there is testimony to the effect that mine foremen permitted rule No. 7 to be violated in their presence, and that on one occasion Everett King, an assistant mine foreman, violated the rule by walking along the side of a motor while it was running and striking the sand pipes in order to loosen the sand. This testimony was categorically denied, except in the case of a mine foreman who is now dead.

Under the circumstances we think this case should be remanded for the purpose of having it further developed on the limited question whether the employer acquiesced in claimant's violation of the rule. On an "appeal" from the Workmen's Compensation Appeal Board this Court will not determine a question in the first instance which has not been fully developed or which has not been considered by the Commissioner and the Appeal Board.

We therefore reverse the order of the Appeal Board and the ruling of the Commissioner, and remand this case to be dealt with by the Appeal Board and the Commissioner in conformity with this opinion.

*Reversed and remanded.*