SAM CHIERICOZZI *v.* COMPENSATION COMMISSIONER *et al.*

(No. 9307)

Submitted February 25, 1942. Decided March 24, 1942.

*Sale, St. Clair & Sale,* for appellants.
*Clarence S. Worrell* and *Albert A. Barley,* for appellee.

Fox, President:

The claimant, Sam Chiericozzi, was injured in the mines of the Koppers Coal Company, resulting in the loss of his left hand. At that time, he was employed as a track man. He had been in the employ of the company and its predecessors for some fourteen years, and had engaged in various types of employment, including that of running a motor and loading coal. The accident occurred on the afternoon of June 7, 1940. The claimant had completed his work shift for that day, and had gone to one of the entries to await the arrival of what is known as a man trip, a group of empty coal cars used exclusively for the purpose of carrying workmen to and from the working places in the mine. Other employees were waiting at the same place with a like purpose. The man trip was late in arriving. At this point a loaded trip, consisting of 23 cars, hauled by two electric motors, one in front and one at the rear, came along, and the claimant, in alleged violation of statute and company rules, boarded the rear motor, which was operated by a motorman's assistant. This assistant knew that the claimant was not permitted to ride on the motor, but, without objection, permitted him to do so. The trip proceeded for a distance, when it stopped to pick up additional cars, at which time either the motorman or the claimant threw a switch so that the eight cars could be picked up by the rear motor. When this was done, claimant again climbed on the motor, and in proceeding to catch up with the main trip, that is, the twenty-three cars pulled by the motor in front, there was a collision, and the claimant was thrown from the motor, and, in some manner, one of the cars rolled over his hand, causing the injury, and his left hand was later amputated about two inches above the wrist joint. The details of the accident are not material, except to show that the injury to the claimant was the direct result of his having boarded the motor instead of waiting for the regular trip.

The employer defends on the ground that claimant was guilty of wilful misconduct, and wilful disobedience of rules and regulations adopted by it, and approved by the

Compensation Commissioner. The claimant would escape this defense, first, by asserting that he had no knowledge of the statute, nor the rules adopted thereunder, and the further claim that any violations of the statute or rules, of which he may have been guilty, were acquiesced in by the employer, and, therefore, it is not entitled to ask that the provisions of Code, 23-4-2, be enforced against him. The Compensation Commissioner denied the claim. The Compensation Appeal Board, by a divided vote, reversed the Commissioner on the ground that the claimant "being a general utility man for the Koppers Coal Company at the time of his injury, was permitted to ride motors, run motors, brake for motors, and lay and repair tracks, which was well known to the mine foreman and other foremen, and was injured without any fault of his own, and is therefore entitled to compensation."

Inasmuch as this case must be decided under Code, 23-4-2, we quote the pertinent provisions thereof:

> "Notwithstanding anything hereinbefore or hereinafter contained, no employee * * * shall be entitled to receive any sum from the Workmen's Compensation Fund * * * on account of any personal injury to or death of any employee caused by * * * wilful misconduct, wilful disobedience to such rules and regulations as may be adopted by the employer and approved by the commissioner, and which rules and regulations have been and are kept posted in conspicuous places in and about the work * * *."

The claim of wilful misconduct is based upon alleged violation of the mining laws of the state, as set out in article 2 of chapter 22 of the Code, and particularly sections 61 and 62, which we quote:

> (61) "Motormen and trip riders shall use care in handling locomotives and cars. * * * They shall not permit any person or persons to ride on locomotives or loaded cars unless granted permission by the mine foreman."
>
> (62) "No person, except the persons necessary to operate the trip or car, shall ride on any loaded

car or on the outside of any car, or get on or off a car while in motion."

The contention that claimant was guilty of wilful disobedience is based upon the violations of rules 1, 7 and 10, alleged to have been promulgated by the employer, approved by the Compensation Commissioner and kept posted, and which read as follows:

> "Rule 1. It shall be the duty of every employee of this company to fully comply with the Mining Laws of the state, and to observe every precaution to prevent accidents; and to fully comply with and obey orders of the section foreman, mine foreman or their superior officers."

> "Rule 7. All persons are forbidden to ride upon any incline or upon any car, conveyor lines, engine, motor or other contrivance except as permitted by law. No employee shall travel to or from his work upon any slope, plane or motor road when another road is provided. When necessary to travel upon any such slope, plane, road or haulway, employee must use every precaution to prevent accident to himself and others."

> "Rule 10. Motormen and brakemen shall not permit any person to ride on any locomotive or trip, except those duly authorized and must stop trip to enforce this rule."

Counsel for claimant contends that as to the statute alleged to have been violated, section 61 is only intended to be an inhibition against motormen permitting persons to ride on locomotives or loaded cars, and they say that section 62 only mentions loaded cars, and does not refer to motors in any way. As to the rules and regulations alleged to have been violated, they say that as to rule 10, the inhibition is only against motormen and brakemen permitting persons to ride on any locomotive. We think that both the statute and the rules quoted above, reasonably interpreted, cover the alleged misconduct and disobedience.

Our compensation statutes were originally enacted on the theory that industry should share the burden of in-

dustrial accidents, regardless of fault, and without regard to negligence or careless conduct on the part of either employer or employee, and thereby escape the more or less rigid rules which governed at common law, or under statutory enactments. The one vital requirement was that injury or death should result from activities in the course of and resulting from employment coming within the statutes. Many cases, too numerous to mention, decided by this Court, require us to give a liberal interpretation to these statutes in favor of the employee.

Notwithstanding all this, there are certain conditions under which compensation may not be awarded, and they are defined in Code, 23-4-2. Code, 22-2 contains specific provisions governing the operation of mines, and we have quoted above two sections which seem to cover the case before us. In *Carbon Fuel Co.* v. *Compensation Commissioner*, 112 W. Va. 203, 164 S. E. 27, we held that "Willful violation by an employee of a statute designed for his protection is willful misconduct under Code 1931, 23-4-2, which forbids compensation for an injury caused by such misconduct." But as corollary thereto, we held in *Prince* v. *Compensation Commissioner*, 123 W. Va. 67, 13 S. E. 2d 396, and *Young* v. *Compensation Commissioner*, 123 W. Va. 299, 14 S. E. 2d 774, that actual knowledge of a statute was a prerequisite to its wilful violation. A different rule prevails when there is disobedience to rules and regulations, approved by the Compensation Commissioner, and posted as provided by the statute. In such case, the employee cannot say that he did not have notice of such rules when the statute in relation to approval and posting has been complied with. *Billings* v. *Compensation Commissioner*, 123 W. Va. 498, 16 S. E. 2d 80. Refraining from taking notice of a rule legally approved and posted does not excuse him. The same case holds that "Under the Workmen's Compensation Law (Code, 23-4-2), wilful misconduct of an employee acquiesced in by the employer does not preclude compensation," and the same rule is applicable to wilful disobedience of rules and regulations.

We find no justification for the position of the Workmen's Compensation Appeal Board holding that claim-

ant is entitled to compensation because he was a general utility man, entitled to ride motors. True, the claimant had at one time operated a motor, and he had done other work in the mines, but at the time of his injury, he was a track man, and neither the statute nor the rules in question make any exception which would give to the claimant a favored status in that regard. If the claimant is entitled to compensation, it must be based on other grounds.

The claimant strenuously denies that he had knowledge of the statute or the rules, especially those governing the riding of motors. He was familiar with other rules, especially those relating to the actual mining of coal. He reluctantly admitted that he had attended some safety meetings. He seems to have made a practice of riding on motors, and contends that he did not know that it was a violation of any rule or statute. Other employees who worked in the mine, testified, without objection, that they knew of the rule against permitting employees to ride motors and loaded cars, and if the claimant did not have such knowledge, he seems to have been alone in that respect. A copy of the mining laws of the State of West Virginia was delivered to the claimant in December, 1936, and at the same time, a copy of rules and regulations prepared by the employer was also delivered to him. The rules and regulations put into the record are dated subsequent to December, 1936, and, therefore, are not proof that the current rules were actually delivered to the claimant. However, though it may be customary to do so, the statute does not require actual delivery of the rules and regulations to employees, and, as we have held, the approval of these rules by the Compensation Commissioner, and the statutory requirement as to posting, is all that is required. So that we have a situation where a claimant was furnished with a copy of the mining laws, in force at the time of the accident, and statutory requirements as to posting and keeping posted approved rules and regulations had been complied with. That these rules and regulations were approved, posted and kept posted is beyond question. Only one witness attempts to controvert

this proposition, and he only states that he did not observe that the rules had been posted. On the whole, we think it clearly appears from the entire record that the claimant had knowledge of the mining laws of the state. He is held to notice of what was contained in the rules and regulations approved by the Compensation Commissioner and posted and kept posted in conspicuous places around the works, notwithstanding his claimed partial illiteracy. This being true, when he boarded the motor just before his accident, he was guilty of such wilful violation of a statute enacted for his benefit and protection, which we have held amounts to wilful misconduct, and of wilful disobedience of rules and regulations of his employer as deprive him of the right to compensation under Code, 23-4-2.

Only one other question remains to be considered, and that is the alleged acquiescence in the misconduct of the claimant on the part of the employer. On no reasonable view of this record can we say that the employer ever acquiesced in violations of either the statute or the rules. True, employees of the company, such as motormen, did know of the claimant's misconduct, but there is no evidence from which we can say that any employee connected with the management, or any supervisory or executive official of the employer knew of it, except in the case where a motorman was penalized for permitting an employee to ride on the motor, and the case in which claimant suffered his injuries, which also involved a penalty imposed upon the motorman involved. The record discloses that the employer stressed this rule, and when advised of its violation, took steps to penalize those guilty thereof, and at all times apparently evinced a determination to require obedience to both the statute and rules and regulations approved and posted.

The ruling of the Compensation Commissioner was correct and should have been approved by the Compensation Appeal Board, and the order of the Compensation Appeal Board, is therefore, reversed and the case remanded to the Appeal Board for the entry of a proper order.

*Reversed and remanded.*