STANFORD THOMPSON

*v.*

STATE COMPENSATION COMMISSIONER, *et al.*

(No. 10134)

Submitted April 12, 1949. Decided June 21, 1949.

96

HAYMOND, PRESIDENT and FOX, JUDGE, dissenting.

*Lant R. Slaven, E. E. Thompson, Jr.,* for appellant.

*Hillis Townsend, W. J. Thompson,* for appellees.

RILEY, JUDGE:

Red Jacket Coal Corporation prosecutes this appeal from an order of the workmen's compensation appeal board, dated December 11, 1948, which reversed an order of the state compensation commissioner refusing claimant, Stanford Thompson, compensation, and held that claimant was entitled to compensation benefits.

Claimant Thompson, who had been an employee of Red Jacket Coal Corporation for more than four years prior to May 9, 1947, the date claimant was injured as the result of being rolled between the top of an empty mine car and

a cross-timber or "cross-collar". The mine car was part of a train, composed of a motor and three cars, which was transporting timbers. Ordinarily, claimant was employed in the coal corporation's mine as a timberman, but at the time he was injured, he was engaged in loading timbers in one or three mine cars forming the supply trip, which were to be hauled about five hundred feet to the place where claimant was to set them. After claimant had completed the work of loading, he signalled the brakeman to pull out, and the brakeman relayed the signal to the motorman, who put the trip in motion. In order to avoid walking the five hundred feet, and evidently to expedite the work of setting the timbers, claimant, according to his own testimony, "started to climb over in the car" while it was in motion. Before he was able to get into the car, he was rolled between the top of the car and a cross-timber or "cross-collar" in the roof.

On the basis of this evidence the employer asserts that Thompson's act in attempting to climb into the moving car immediately after he had signalled the brakeman to start the trip, and while the car was moving, was such wilful misconduct as would bar compensation. It is contended that claimant's said act was: (1) A wilful violation of Code, 22-2-62, which reads: "No person, except the persons necessary to operate the trip or car, shall ride on any loaded car or on the outside of any car, or get on or off a car while in motion"; (2) a wilful violation of paragraph four of Rule No. 1, promulgated by the employer and conspicuously posted on the mine property, but not approved by the state compensation commissioner, as required by Code, 23-4-2, which reads: "All employees are forbidden to ride upon any incline, cars, engines, locomotives, conveyors or any other contrivance except that specifically provided and authorized by the Corporation to be used for transporting employees"; and (3) that, independent of company rules and Code, 22-2-62, claimant's said act constituted wilful misconduct.

As shown by a receipt signed by claimant, he was given and received a copy of the Mining Laws, which embraced Code, 22-2-62, more than four years prior to the date of his injury, when he was first employed by the Red Jacket Coal Corporation. About twice a week, and perhaps on other occasions, the coal corporation gave, through its foremen, general safety instructions and, though the record does not specifically show that claimant was present at the time any of these instructions were given, there is evidence to the effect that it would have been practically impossible for an employee, who had been employed by the coal corporation for several years, as plaintiff had been, not to have heard at least some of the oral safety instructions and warnings. Claimant was never personally warned not to get on a moving car, nor was claimant, or any other employee, so far as this record discloses, ever observed by the foremen of the coal corporation in the act of riding on loaded cars, or boarding moving cars.

At the time claimant was injured, the train was backing with the light of the locomotive pointed in a direction opposite the bar on which claimant was injured, and whether the motorman and brakeman actually saw claimant attempting to get on the moving car does not clearly appear. Though the statute, Code, 22-2-61, provides that motormen and trip riders "shall not permit any person or persons to ride on locomotives or loaded cars unless granted permission by the mine foreman", such provision of the statute is not involved here, for this record does not disclose that claimant at the time he was injured was attempting to board a loaded car.

The pertinent provision of the statute barring compensation, Code, 23-4-2, as amended by Chapter 104, Acts of the Legislature, 1937, reads: "Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee shall be entitled to receive any sum from the workmen's compensation fund, * * * on account of any personal injury to or death of any employee

caused by a self-inflicted injury, wilful misconduct, wilful disobedience to such rules and regulations as may be adopted by the employer and approved by the commissioner, and which rules and regulations have been and are kept posted in conspicuous places in and about the work, * * *."

As the safety rule in the instant case was not approved by the state compensation commissioner, as required by the foregoing statute, the rule and the general admonitions and instructions given to the coal corporation's employees concerning it, cannot be relied upon by the employer to defeat Thompson's claim for benefits. In *Prince v. State Compensation Commissioner*, 123 W. Va. 67, pt. 1 syl., 13 S. E. 2d 396, this Court held: "Under Code, 23-4-2, as amended by Chapter 104, Acts 1937, rules and regulations adopted by an employer must be approved by the Compensation Commissioner before willful disobedience thereof can be relied upon by the employer to defeat a claim for benefits under the Compensation Law." *Forsyth v. State Compensation Commissioner*, 125 W. Va. 78, 23 S. E. 2d 66.

As claimant was injured while attempting to get on and into a moving car, he was guilty of a violation of Code, 22-2-62, unless he comes within the category of the persons excepted from the operation of the statute, that is persons "necessary to operate the trip or car." Clearly, Code, 22-2-62, was designed for the protection of persons, including claimant, who are employed in mining in this State, and this Court has held that the wilful violation by an employee of such statute is wilful misconduct under Code, 23-4-2, as amended by Chapter 104, Acts of the Legislature, 1937, barring compensation. *The Carbon Fuel Company v. State Compensation Commissioner*, 112 W. Va. 203, pt. 1 syl., 164 S. E. 27; *Chiericozzi v. State Compensation Commissioner*, 124 W. Va. 213, pt. 1 syl., 19 S. E. 2d 590. As a corollary to this rule, it was held in *Prince v. State Compensation Commissioner, supra*, pt. 2 syl., that: "Acts and conduct of an employee violating a statute, so as to constitute willful misconduct, within the

meaning of Code, 23-4-2, as amended by Chapter 104, Acts 1937, must be done with notice of the statute and in willful disobedience thereof." Whether claimant knew of the pertinent statute is of no moment. When he was employed by the Red Jacket Coal Corporation, he was given and received a copy of the Mining Laws, as shown by his signed receipt, filed with the record herein. He is, therefore, charged with actual notice of the provisions of Code, 22-2-62. In *Barta v. State Compensation Commissioner*, 128 W. Va. 448, pt. 1 syl., 37 S. E. 2d 81, this Court held: "An employee in a coal mine is charged with actual notice of a particular provision or section of the statutes of this State, relating to mines and mining, when a copy of such statutes is delivered to him in person by the employer."

As heretofore indicated, there is no evidence in this record that the employer ever expressly permitted claimant to get on or off moving cars; nor is there any evidence that the employer acquiesced in such practice, and, as this claimant was in the act of getting on a car while in motion, he is barred from recovery, unless at the time and place he was injured, he was a person "necessary to operate the trip or car."

The instant claimant, though generally employed as a timberman, was, at the time he was injured, employed by the coal corporation as a timber loader on the train upon which he was injured, or, to be more specific, he was employed in loading and unloading timbers which were to be carried from one place to another in the mine. He had, in fact, loaded the timbers on one or more of the cars, for the purpose of having them taken to a place in the mine about five hundred feet distant, where it was his duty to unload them, and thereafter, acting as a timberman, to set the timbers.

Belcher, the brakeman on the train, testified in answer to the question: "How was Thompson to get from where he loaded the timbers at approximately five hundred feet to where the timbers were to be unloaded", said: "Either

walk or get in the car and ride; sometimes they got in the cars and sometimes they walked"; and he answered affirmatively the question: "Did I understand you to say that men rode in the cars in a trip where there were also timber cars?" Stafford, the motorman, testified that men were accustomed to ride on trips where timbers were being transported: "They didn't ride in where the timbers were, they rode behind them after they were loaded." So evidently it was the practice, according to these witnesses, who were charged under Code, 22-2-61, with keeping all persons from riding "on locomotives or loaded cars unless granted permission by the mine foreman", to permit employees charged with the duty of loading material, including timbers, to ride either empty cars or behind the timbers when the cars were loaded, as the material was being carried from outside the mine to a place within it, or from one place to another within the mine. This testimony bears directly on the question whether Thompson, after he had loaded the timbers and was required to go five hundred feet to set the same, was a person "necessary to operate the trip or car." If at the time he was injured, he was such a person, his action in getting on the car while it was moving was not violative of Code, 22-2-62.

In the instant case the distance of transportation was approximately five hundred feet. If Thompson had been required to walk that distance, the unloading and setting of the timbers would have been delayed for some time. In determining this all-embracing question whether claimant was necessary to operate the trip or car within the purview of the statute, we must consider the character of his employment. He was, in fact, a person employed in the loading, transporting and unloading of timbers on the supply train at the time he was injured. If, as is true in some mines, the distance from where the timbers had been loaded to the place where they were to be set, had been several miles, for instance from the mouth of the mine to a place deep within the mine, and the same employee, as in Thompson's case, was charged with the

duty of both loading and unloading, and was required to walk, there would be a delay of about an hour. Truly such delay would not work to the expeditious transportation of supplies in our modern mines in which coal is being mined on a large scale, which, of itself, requires prompt delivery of supplies. At the meeting of a statewide safety council, held in Charleston under the sponsorship of the West Virginia Safety & Health Council, in April, 1949, the general superintendent of a large coal mining operation in northern West Virginia said: "The consumption of supplies is much greater in today's mine and, for efficient usage, must be delivered where needed as rapidly as possible. This calls for fast unhindered movements of the supply crew as they travel from section to section." Claimant, in our opinion, in view of the realities presented by this case, was an integral part of the supply crew of the train upon which he was injured; and, in interpreting, as this Court should do, Code, 22-2-62, liberally and from a practical viewpoint, claimant was necessary to the operation of the trip. As the compensation fund was created for the protection of both employers and employees, this Court time and again has said that the Workmen's Compensation Act should be liberally construed and applied, so as to effectuate the purpose of the statute. *Caldwell v. State Compensation Commissioner,* 106 W. Va. 14, 18, 144 S. E. 568; *Sole v. Kindelberger,* 91 W. Va. 603, 114 S. E. 151. The Act protects the employer against the risk of being mulcted in damages in actions at law, and against the payment and expenses of litigation and counsel fees. On the other hand, it provides injured employees with medical attention and hospitalization and insures employees, within the provisions of the Act, against the negligence of their employers and against the operation of the doctrines of contributory negligence and assumption of risk, and the fellow servant rule. *Stevely v. State Compensation Commissioner,* 125 W. Va. 308, 24 S. E. 2d 95; *McEwan v. State Compensation Commissioner,* 123 W. Va. 310, 314, 14 S. E. 2d 914; *Long Flame Coal Company v. State Commissioner,* 111 W. Va. 409, 413, 163

S. E. 16. It is on this basis that this Court has invoked the liberality rule in the interpretation and application of the workmen's compensation statute, and, by the same token, it should not pay lip service to the rule, and then in deciding cases, by technically interpreting and applying the statute, ignore the rule. We therefore hold that claimant is not barred on the ground that he wilfully violated Code, 22-2-62.

But is claimant barred from compensation on the ground that he was guilty of wilful misconduct, independent of company or statutory safety rules, as was the case in *Red Jacket Consolidated Coal and Coke Company v. State Compensation Commissioner*, 111 W. Va. 425, 162 S. E. 313? "* * * wilful misconduct is not limited to the violation of statutory law. It may consist of the deliberate doing, or the refusal to do, anything commanded or inhibited by any competent authority." *Stevely v. State Compensation Commissioner, supra,* page 311. In *Prince v. State Compensation Commissioner, supra,* page 70, this Court, in relying upon decisions in other jurisdictions said: "In *Glass v. Sullivan,* 170 Tenn. 230, 94 S. W. (2d) 381, it is said that willful misconduct means more than negligence and carries the idea of deliberation and intentional wrongdoing. 'Willful misconduct includes all conscious or intentional violations of definite law or rules of conduct, as distinguished from inadvertent, unconscious, or involuntary violations.' *Aetna Life Ins. Co. v. Carroll,* 169 Ga. 333, 150 S. E. 208." This definition was adopted verbatim in the dissenting opinion in the *Prince* case.

We cannot, of course, say that Thompson's action in attempting to board the car just as it was moving out was unconscious, nor can we say that it was involuntary. It was, however, inadvertent, and in the face of a sudden emergency created by the movement of the train immediately after claimant gave the signal to the brakeman and before he had time to get into the empty car. As the train started to move out, he then and there was confronted with the necessity of deciding whether to attempt

to get into the empty car or delay the setting of timbers while he walked the five hundred feet to the place where the timbers were to be unloaded and set. In *Stevely v. State Compensation Commissioner, supra,* pt. 2 syl., this Court held: "An act of an employee, which may contravene instructions of his superiors, or of the state mining authorities, or be contrary to generally known and accepted practices of similar employees, but which appears to have been done impulsively or spontaneously in the face of a sudden and unforseen emergency, does not amount to 'wilful misconduct', within the meaning of Code, 23-4-2, so as to bar compensation to a dependent for the death of such employee resulting from such act." Perhaps it may be said that Thompson was negligent in creating the emergency in that he gave the signal to the brakeman before he had an opportunity to get into the car; but if he was negligent, even if grossly so, his negligence in this regard under the *Stevely, McEwan* and *Long Flame Coal Company* cases, heretofore cited, will not bar compensation. It may even be that in giving the signal prematurely, or in attempting to board the moving car, claimant used poor judgment, but bad judgment of itself does not constitute statutory wilful misconduct. *Prince v. State Compensation Commissioner, supra,* page 70. In boarding the moving train claimant in this case did so in furtherance of his duty. He was not, as in the cases of *The Carbon Fuel Company v. State Compensation Commissioner, supra; Chiericozzi v. State Compensation Commissioner, supra;* and *Barta v. State Compensation Commissioner, supra,* cited by counsel for the employer, merely serving his own accommodation and convenience. The claimants in all three of those cases were not acting to expedite the performance of their duties: they had no right to board and ride a loaded mine vehicle. In *The Carbon Fuel Company* case, claimant rode a loaded trip because "he was in a hurry to get to the store", and, unlike the instant claimant, he had been warned by his employer's mine foreman on a prior occasion, when he was found violating Code, 22-2-62. In the *Chiericozzi* case,

claimant there, rather than wait for a regular man trip, which for some reason was late, caught a loaded train. In the Barta case the employee, while on his way out of the mine, met his death either by falling from a loaded mine car, on which he had no right to travel, or was run over by a car while he was on the mine track.

We are of the opinion, in the circumstances of this case, that claimant is not barred from compensation benefits on the ground that he was guilty of wilful misconduct, and, his injuries being compensable in all other respects, the workmen's compensation appeal board, in our opinion, was justified in reversing the order of the state compensation commissioner and in awarding claimant compensation benefits.

The order of the workmen's compensation appeal board is affirmed.

*Affirmed.*

Fox, Judge, dissenting:

I am unable to concur in the majority opinion in this case.

I do not contend that the claimant should be denied compensation on the theory that what he did was in wilful disobedience of rules and regulations adopted and promulgated by the employer, because there is no showing in the record that such rules and regulations, if such were ever promulgated, were approved by the Compensation Commissioner. Under *Prince v. State Compensation Commissioner,* 123 W. Va. 67, 13 S. E. (2d) 396, such approval is required to make such a rule effective.

But Code, 22-2-62, being a part of the mining laws of this State provides:

> "No person, except the persons necessary to operate the trip or car, shall ride on any loaded car or on the outside of any car, or get on or off a car while in motion."

The purpose of this statute is clear. Anyone knows that getting on or off a mine car while the same is in motion is dangerous and likely to result in death or great bodily harm. Heretofore, the attitude of this Court has been to enforce this statute as reasonable and essentially necessary to guard against accidents in mines. One of the first cases on the question was *Red Jacket Consolidated Coal & Coke Co. v. State Compensation Commissioner,* 111 W. Va. 425, 162 S. E. 665, in which this Court stated in the body of the opinion that:

> "An employee who takes 'short cuts' involving dangerous practices, known to him to be dangerous and to be disapproved by his fellow workmen because of the danger, and in express violation of the instructions of his foreman, assumes entire responsibility as to what may happen to him as a result of such improper practices. Because of such willful misconduct an employee may not himself receive compensation if his injury is not fatal, nor are his dependents entitled to compensation if he incurs fatal injury. It would be harsh indeed to impose liability on an employer in such circumstances."

This rule was followed in *Ragle v. State Compensation Commissioner, et al.,* 125 W. Va. 450, 24 S. E. (2d) 756. In *The Carbon Fuel Company v. State Compensation Commissioner,* 112 W. Va. 203, 164 S. E. 27, we held:

> "Willful violation by an employee of a statute designed for his protection is willful misconduct under Code 1931, 23-4-2, which forbids compensation for an injury caused by such misconduct."

This ruling was followed in *Chiericozzi v. Compensation Commissioner,* 124 W. Va. 213, 19 S. E. (2d) 590. In *Prince v. State Compensation Commissioner, supra,* we held:

> "Acts and conduct of an employee violating a statute, so as to constitute willful misconduct, within the meaning of Code, 23-4-2, as amended

by Chapter 104, Acts 1937, must be done with notice of the statute and in willful disobedience thereof."

This was followed by *Barta v. State Compensation Commissioner,* 128 W. Va. 448, 37 S. E. (2d) 81, in which it was held that:

"An employee in a coal mine is charged with actual notice of a particular provision or section of the statutes of this State, relating to mines and mining, when a copy of such statutes is delivered to him in person by the employer."

In the case at bar, it clearly appears that a copy of the mining laws of this State, including Section 62 quoted above, was delivered to the claimant in person. In *Young v. State Compensation Commissioner,* 123 W. Va. 299, 14 S. E. (2d) 774, this Court, in discussing the meaning of the word "willful", had the following to say:

"Claimant contends that willful misconduct or willful disobedience of rules is not shown in this case, and insists that within the meaning of the statute wilfulness means more than mere negligence, carelessness, premeditation or intent, but must include an intent to do a wrongful act, and cites 71 C. J. 762, *King v. Empire Collieries Co.,* 148 Va. 585, 139 S. E. 478, 58 A. L. R. 193 in support of this contention. While it is true that a willful act, in most cases, may be said to be wrongful, we do not think that intent to do a wrongful act is a necessary element. Knowledge of the statute or rule promulgated and deliberate and intentional violation of either constitutes willful misconduct. *Riverside & Dan River Cotton Mills v. Thaxton,* 161 Va. 863, 172 S. E. 261; *Red Jacket Consolidated Coal & Coke Co. v. Compensation Commissioner,* 111 W. Va. 425, 162 S. E. 665; *Carbon Fuel Company v. Compensation Commissioner, supra.* The *Riverside* case discusses the case of *King v. Empire Collieries, Co., supra,* and the prevailing rule in Virginia and in this state is that only knowledge, delib-

eration, and intent are necessary to establish willful misconduct or willful disobedience to rules. The danger to an employee or to his fellow workers, growing out of misconduct or a violation of rules, is just as real if it be without wrongful purpose, as it would be if accompanied by a vicious or criminal intent."

In *Stevely v. Compensation Commissioner,* 125 W. Va. 308, 24 S. E. (2d) 95, we held that:

"An act of an employee, which may contravene instructions of his superiors, or of the state mining authorities, or be contrary to generally known and accepted practices of similar employees, but which appears to have been done impulsively or spontaneously in the face of a sudden and unforeseen emergency, does not amount to 'wilful misconduct', within the meaning of Code, 23-4-2, so as to bar compensation to a dependent for the death of such employee resulting from such act."

In the majority opinion in the case at bar it is stated:

"We cannot, of course, say that Thompson's action in attempting to board the car just as it was moving out was unconscious, nor can we say that it was involuntary. It was, however, inadvertent, and in the face of a sudden emergency created by the movement of the train immediately after claimant gave the signal to the brakeman and before he had time to get into the empty car."

The theory, sometimes advanced, that in a compensation case wilful misconduct must involve a quasi criminal tendency, is not stressed, or even asserted.

Further considering the question of wilful misconduct it is stated in the body of the opinion in *Prince v. Compensation Commissioner, supra,* by quotation from other authorities, that:

" 'Willful misconduct includes all conscious or intentional violations of definite law or rules of conduct, as distinguished from inadvertent, unconscious, or involuntary violations.' "

This was a fact overlooked in the majority opinion, when the statement was attributed to the dissenting opinion in that case. The dissenting opinion in that case only adopted the statement of the majority opinion. Of course, all will admit that negligence, even if gross, or the exercise of bad judgment, does not alone, or taken together, constitute misconduct barring compensation.

The above cases have clearly established the law on the subject of wilful misconduct. We find that such misconduct bars compensation to one who has been guilty thereof. Code, 23-4-2, as amended by Chapter 104, Acts of the Legislature, 1937, provides:

"Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee shall be entitled to receive any sum from the workmen's compensation fund, or to direct compensation from any employer making the election and receiving the permission mentioned in section nine (§ 2519), article two of this chapter, or otherwise under the provisions of this chapter, on account of any personal injury to or death of any employee caused by a self-inflicted injury, wilful misconduct, wilful disobedience to such rules and regulations as may be adopted by the employer and approved by the commissioner, and which rules and regulations have been and are kept posted in conspicuous places in and about the work, or the intoxication of such employee, or the failure of such employee to use or make use of any protective or safety appliance or appliances prescribed by the commissioner and furnished by the employer for the use of or applicable to such employee. * * *"

In this case the claimant does not deny that he violated the provisions of Code, 22-2-62 against an unauthorized

person getting on or off a car while it was in motion. In his testimony he admits such violation. We are, therefore, not called upon to pass upon any factual question, unless it be whether the action of the claimant was inadvertent and due to an emergency. On this point, how can it possibly be reasoned that an act requiring the physical effort necessary to board a moving train was inadvertent? What is an inadvertent act? According to Webster it is, "not turning the mind to a matter; heedless; negligent; inattentive". It is close to an involuntary act, and there was, and could not have been anything involuntary in what claimant did. His act was one which required intent and physical effort, and had in it no element of inadvertence. Turning to the supposed emergency, what was the emergency which required him to board this moving car? It can not be decerned by the ordinary mind, from anything in the record before us. An emergency is defined by Webster as "An unforeseen combination of circumstances which call for immediate action; also, less properly, exigency." There was neither an emergency nor an exigency when claimant boarded a moving car. All he had to do to continue his work in regular routine was to walk 500 feet. In the majority opinion it is stated:

"As heretofore indicated, there is no evidence in this record that the employer ever expressly permitted claimant to get on or off moving cars; nor is there any evidence that the employer acquiesced in such practice, * * *."

And the opinion then states:

"* * * and, as this claimant was in the act of getting on a car while in motion, he is barred from recovery, unless at the time and place he was injured, he was a person 'necessary to operate the trip or car'."

Thus, it appears that, according to the majority opinion, every avenue to the allowance of compensation in this case has been closed by the statute, and the rulings of this

Court, which are recognized and presumably approved, save on the theory that, in some way, quite beyond my comprehension, the claimant's presence on this car and trip was necessary to its operation.

The word "necessary" is defined by Webster as: "A thing that is necessary or indispensable to some purpose, something that one can not do without; a requisite; an essential." What made the presence of claimant on this moving car indispensable, or requisite, or essential?

Who is it that operates a "trip or car"? Obviously, those who control the machinery and equipment used for that purpose. As is well known, motors, with cars attached thereto, are operated in mines for many purposes: among others, to carry men to and from their working places in the mine; to carry machinery, tools and materials; to transport timber for posting working places and the approaches thereto; and for hauling coal out of the mine. In each of these activities, men are employed, and each employee, and all together, contribute to the all-out purpose of mining coal. But the "trip or car", is operated by the men trained and employed for that purpose, and, in practice, they are a motorman and a brakeman, who work under the control of a mine superintendent or a mine foreman. No other persons have any control as to how the "trip or car" is to be operated. They have had no training for that work, and the help of no other employee is necessary or needed in such operation. Claimant was a timberman whose duty it was to set timbers in the mine. To set timbers, it was necessary to have them placed at the location in the mine where needed, and this was done by the method of transporting them into the mine by motor-propelled cars operated by a motorman and a brakeman. In the present instance, timber was loaded on the car to be moved a distance of 500 feet to another location in the mine. What necessary part did, or could, the claimant play in this simple operation? All that was involved was a signal by the brakeman to start the trip, and the motorman's

operation of power to the motor. If claimant had remained at the loading place, the trip would have been operated with the same degree of efficiency as it was handled in the circumstances. Not only was the claimant not necessary to the operation of the trip or car, but there was absolutely no place, in connection therewith, where he could have been of any aid whatever. To hold that he was "a person necessary to operate the trip or car" is to fly in the face of all reason, and cannot, in my judgment, be justified on any ground whatever. Mere assertion cannot make black white. Common sense and every other consideration based on reason brands the holding as unsound and indefensible.

It is said that claimant's violation of the statute expedited the trip, and served the employer's interests. Waiving any reference to this unusual interest in the employer, to what does this strange argument lead? Simply this: if by violating the law you serve an employer's interest, well and good, your law violation will not be held against you; the statute enacted for the protection of all workmen will be ignored, and in effect nullified, merely to allow compensation to a single miner who, though entitled to sympathy, has brought on his troubles by his own plain and admitted violation of a law enacted for his benefit, and for the benefit of those similarly situated. If this holding. is to be established as law in this State, then mine workers may board moving cars at will, if by so doing they get to their working places in a shorter time, and thus produce more coal for their employer, and in that manner better serve his interests. I am unwilling to ignore the plain provisions of the statutes of this State, and thus make ineffective statutes designed to protect all workers in mines, merely to award compensation to one, or, for that matter, any number of applicants, whose injuries have resulted from his or their own wilful misconduct.

The lightly veiled insinuation that those who may disagree with the majority opinion pay lip service only to

the recognized principle that in dealing with compensation law a liberal interpretation, in favor of claimants for compensation, should be applied, and that in deciding cases they follow a technical interpretation and application of such statutes, demands attention. First, may I ask what is it that is technical in the claim that claimant was not necessary to the operation of the "trip or car"? It is a plain contention which may be disposed of by the use of that type of reason which is applied to the every day transactions of life, and is widely divorced from all so-called technical consideration. Second, may I ask what rule of liberality in construing a statute, requires us to give to it an interpretation which is contrary to all reason or logic, and which serves to destroy the very purpose for which the statute was enacted. The concern which is felt by employers, employees, and the agencies of each, over the distressing injuries and loss of life in the coal mining industry, should prompt us to strictly enforce laws, rules and regulations duly enacted, or adopted, legally approved and promulgated, which have for their purpose the saving of human life, and the avoidance of human suffering. It is the only contribution this Court can make to that end, and any court which overlooks the importance of such enforcement, and which through its decisions in individual cases emasculates enactments for the protection of employees in any activity, ill serves the cause of the men who toil in the mines, factories or other industrial enterprises, of this State. If, in taking the position that such laws and regulations should be reasonably enforced, I am paying lip service only to a liberal construction of our statute, so be it.

Speaking of technical constructions of these statutes, I am willing to contrast the position of the majority, and that of the minority, in the case at bar, and let interested parties judge by whom the technicalities, if any there be, are employed.

For reasons above stated, I dissent; and I am authorized to state that Judge Haymond concurs herein.