LORA STEVELY *v.* COMPENSATION COMMISSIONER *et al.*

(No. 9432)

Submitted January 13, 1943. Decided February 2, 1943.

*Schmidt, Hugus & Laas,* for appellant Valley Camp Coal Co.

*McKee & McKee,* for appellee.

ROSE, JUDGE:

Carl Stevely, an employee of The Valley Camp Coal Company, at its No. 3 mine located near the town of Triadelphia in Ohio County, was killed while at work on the 18th day of November, 1941. Lora Stevely made claim as his widow and dependent, and by the Compensation Commissioner was awarded $30.00 per month upon the conditions prescribed by the statute, which award, on appeal, was affirmed by the Compensation Appeal Board, and this appeal was granted the employer.

The deceased was a motorman operating a four-ton electric motor used for haulage in the mine. Immediately before the fatal accident, he started to bring his motor, without cars, out of the mine, following, at a distance of

more than six hundred feet, an eight-ton motor also empty. When the advance motor had proceeded about one mile, a loosened hanger caused its trolley to slip from the wire, upon which the motorman in charge allowed it to drift a distance fixed by the evidence as between fifty and two hundred feet. It was then stopped and held by its brakes. When Stevely's motor reached the same detached hanger, its trolley also left the wire, but he, instead of stopping or reducing his motor to control, rose to his feet and, with his back toward the direction in which the motor was traveling, proceeded to replace the trolley. Just as this act was completed, he turned and was in the act of seating himself when his motor crashed into the standing eight-ton motor, resulting in his instant death. Goundry, the driver of the eight-ton motor, and Todd, a "snapper", or assistant, who was riding the Stevely motor, were the only surviving witnesses to the event. Both testified, but the excitement of the moment and the partial darkness ensuing, seem to have left them confused. The evidence shows that Stevely was thrown upward into the air by the impact of the motors, and upon their rebounding apart, fell in front of his own motor, which again immediately advancing down grade, ran over or against him, causing his death.

The employer resisted the widow's claim on the theory that Stevely's death resulted from "wilful misconduct" and from "wilful disobedience" of certain rules and regulations which had been adopted by the employer and approved by the Workmen's Compensation Commissioner, and were kept posted as required by statute. The only "rule and regulation" so adopted, approved and kept posted on which reliance is placed is this: "When locomotive is in motion, do not stand up in the cab."

For two reasons, we think no bar arises under this rule. In the first place, Stevely's death is not shown to have been "caused by" his standing up in the cab. No evidence tends to indicate that his mere standing up in any way contributed to the accident. His failure to stop the motor, or to keep it under control, his turning his back in the

direction of travel, and possibly other acts, may each have contributed to bring about his death. But his mere standing up is not shown to have caused the collision, or in any way to have contributed to his death. *Billings* v. *State Compensation Commissioner*, 123 W. Va. 498, 16 S. E. 2d 804. In the second place, the rising to his feet was apparently an impulsive, spasmodic, unpremeditated act done in a sudden emergency. By no reasoning can the act be called "wilful", a quality necessary to be shown in order that it may constitute a statutory bar. If not excusable, the act at most was only negligence, which, however gross, does not defeat the right to compensation.

But the decedent's conduct may not have amounted to "wilful disobedience" of a company rule, and yet have been "wilful misconduct", within the meaning of the statute. The latter expression is very general and very broad, and is not attempted to be defined in the statute. We have held, however, that the violation of a statutory mandate or inhibition may come under this designation. *The Carbon Fuel Co.* v. *State Compensation Commissioner*, 112 W. Va. 203, 164 S. E. 27; *Chiericozzi* v. *State Compensation Commissioner*, 124 W. Va. 213, 19 S. E. 2d 590. But in order that such violation be considered wilful, it must appear that the violator had actual knowledge of the statute which he had transgressed. *Prince* v. *State Compensation Commissioner*, 123 W. Va. 67, 13 S. E. 2d 396; *Young* v. *State Compensation Commissioner*, 123 W. Va. 299, 14 S. E. 2d 774. And, of course, wilful misconduct is not limited to the violation of statutory law. It may consist of the deliberate doing, or the refusal to do, anything commanded or inhibited by any competent authority.

It is under these principles, as we understand appellant's position, that two other rules are invoked, the alleged violation of which by the decedent is said to further constitute a bar to compensation herein. These are found only in a forty-five page booklet, entitled "Inspection Report", issued by the state department of mines and are as follows: Rule 20. "Locomotives and cars should be handled carefully and kept under control at all times."

And Rule 24. "Trips, locomotives, and all other mechanically propelled equipment traveling in the same direction should be maintained at least three hundred feet apart." The directions contained in this "Inspection Report" are called, and treated as, a part of the "mining law" of the state by counsel for the employer. They do not rise to that dignity. This booklet simply stipulates in detail a vast number of conditions and practices which are required or forbidden, as the case may be, non-compliance with any of which is to be marked in the report by a check-mark after the violated instruction. The booklet in form is merely a comprehensive code of directions from the chief of the department of mines to mine inspectors. It is not, apparently, issued directly to either employer or employees. The statute does require, however, that each of the mine inspectors "shall report in writing, weekly, to the chief of the department of mines, the number and condition of all mines inspected by him during each week, and shall deliver to the operator or operators of each mine inspected a certificate of inspection, and shall post a duplicate certificate at a prominent place of the operating company where it may conveniently be read by any of the mine employees." Code, 22-1-9. No penalty is expressly imposed on any employee for failure to observe the requirements of this "Inspection Report", or of such certificate of inspection, but failure of the employer to enforce "written instructions" by a mine inspector is made a misdemeanor. Code, 22-2-71. And there is no provision of the statute by which the employee is required to be given information of such "written instructions". No provision of the statute makes the delivery of such certificate notice to the employee for any purpose, or makes his failure to observe the same a bar to recovery of compensation by him or his dependents for his injury or death.

It is, of course, easily conceivable that besides the violation of a known statute or of an order of a superior or the instructions of a mining inspector or of the department of mines, other grossly improper acts may amount to "wilful misconduct" by the employee. *Red Jacket Consol. Coal & Coke Co.* v. *State Compensation Commissioner,*

111 W. Va. 425, 162 S. E. 665. But we are of opinion that, upon the evidence in this case, the commissioner could legally find that no such impediment to a recovery herein has been shown. It does not conclusively appear that the deceased actually knew of any rule of the mine department or instruction of the mine inspector against driving his motor within three hundred feet of the one preceding him, or that he actually knew that good mining practice condemned such an act. Further, even if he were shown to have been fully aware of all these things, it does not so appear from the evidence that he ever approached the advance motor more closely than three hundred feet except at the time of the collision or that his speed was excessive. Of course, any rear-end collision necessarily involves the approach by the rear vehicle within three hundred feet, but this fact alone does not show a wilful doing of the act. Moreover, all the acts charged against the decedent occurred after a sudden and surprising happening, amounting in some degree to an emergency, and the commissioner could well have found that his conduct immediately thereafter was not sufficiently deliberate, obstinate, purposeful, or reckless as to amount to wilfulness. These observations apply as well to the alleged violation of the rule requiring that the motor "should be handled carefully and kept under control at all times", a rule, by the way, which has also the infirmity of such a degree of generality and universality as to render its practical assistance as a guide to a motorman in any specific instance very questionable.

We think there is evidence in this case from which the commissioner could legally draw the conclusion which he reached, and the order of the Appeal Board appealed from is accordingly affirmed.

*Affirmed.*