EDWARD DOMBROSKY

*v.*

STATE COMPENSATION DIRECTOR
AND
SEMET-SOLVAY DIVISION, ALLIED CHEMICAL CORPORATION

(No. 12393)

Submitted January 26, 1965.     Decided March 23, 1965.

*Spilman, Thomas, Battle & Klostermeyer, R. Page Henley, Jr., Van-Antwerp & Van-Antwerp,* Ashland, Ky., for appellant.

*DiTrapano & Mitchell, John R. Mitchell,* for appellee.

HAYMOND, JUDGE:

On this appeal the employer, Semet-Solvay Division, Allied Chemical Corporation, seeks reversal of an order of the Workmen's Compensation Appeal Board entered July 8, 1964, which affirmed an order of the Director entered February 27, 1964, which granted the claimant, Edward Dombrosky, an award of total permanent disability.

The claimant while employed by the Semet-Solvay Division, Allied Chemical Corporation, as a machine operator in

its coal mine at Harewood, West Virginia, on September 9, 1954, sustained an injury to his back and hips when his hips were "squeezed between cutting machine and rock", which injury has been described in the various medical reports as a bruise or mashing or crushing type of injury to his hips. After a short interruption he continued to work during the remainder of that day and then consulted Dr. Stallard of Montgomery, West Virginia, who diagnosed it as "A strain, lumbar muscles and ligaments. Abrasions, lumbar region". An x-ray examination disclosed no bone injury and the claimant returned to work on September 12, 1954 and continued to work in the mine with slight interruptions until December 27, 1960 when he quit his employment and since that time he has been unemployed and has not performed any kind of work.

On May 19, 1955, the State Compensation Commissioner, now Director, found the claimant's injury to be compensable and on October 13, 1955, awarded a 3% permanent partial disability on the recommendation of Dr. Kuhn. This award was protested and after an examination of the claimant by Drs. Kessel and Anderson, the commissioner awarded the claimant 10% permanent partial disability on August 2, 1956, and that award was affirmed by the appeal board by its order of December 17, 1956. The claim was reopened on February 7, 1958, on the basis of medical reports by Drs. Swart and Anderson, each of whom recommended an award of 15% permanent partial disability. The claimant was referred to Dr. Miyakawa, who also recommended an award of 15% permanent partial disability and this was granted by the commissioner on April 30, 1958. The claim was again reopened on March 11, 1959 and the commissioner referred the claimant to Dr. Miyakawa, who recommended an award of 18% permanent partial disability which was granted by the commissioner on June 1, 1959, and that award was affirmed by the Workmen's Compensation Appeal Board on January 22, 1960.

On March 3, 1961, the claim was again reopened on the basis of a report by Dr. Kuhn, in which he recommended an award of 25% permanent partial disability. The claim-

ant was referred to the Wheeling Clinic for examination, after which the clinic recommended an award of 20% permanent partial disability, and the commissioner awarded an additional 2% to the claimant on June 13, 1961 on the previous award of 18% permanent partial disability. The claimant protested this award and after various hearings and examinations of the claimant by Drs. Aguilar, Callender, Anderson, Stemmermann, Owen and Hamilton, the Director vacated his award of June 13, 1961 and by order entered February 27, 1964 granted the claimant an award of total permanent disability, which was affirmed by the Workmen's Compensation Appeal Board by the order of which the employer complains on this appeal.

The principal ground on which the employer seeks reversal of the order of the appeal board is that it is not supported by the evidence, for that reason is plainly wrong, and should be reversed by this Court. It also contends that the claimant has not satisfied the requirement of establishing his claim by proof under the liberality rule which applies in compensation cases and that he has not shown that his disability is attributable to a definite, isolated, fortuitous occurrence as required by the workmen's compensation statute, as declared by this Court in point 1 of the syllabus in Adams v. G. C. Murphy Company, 115 W. Va. 122, 174 S. E. 794. The employer admits that the claimant is severely crippled by arthritis and is disabled from performing any heavy manual labor and in its brief in this Court asserts that the sole question involved is whether the evidence shows that the arthritic disability of the claimant was directly caused by the injury.

It sufficiently appears, from the evidence and the reports of at least three of the doctors who have examined the claimant, that he is totally and permanently disabled and according to the report of at least one of them is not employable in any capacity and his physical condition will continue to become worse.

The evidence shows that the claimant prior to his injury had suffered no disability and there is no indication that

arthritis, with which he is now afflicted, existed prior to the injury.

The controlling question to be determined, which is a question of fact, is whether the present total permanent disability of the claimant was caused directly by the injury or indirectly by causing or aggravating the arthritis, or whether the arthritis occurred independently of the injury and was the sole cause of the present total permanent disability of the claimant.

The evidence and the reports of the doctors are conflicting as to the cause of the total permanent disability of the claimant.

Dr. Stallard examined the claimant shortly after his injury and in his report stated that an x-ray indicated that the bony framework was normal and that the claimant was not suffering from any acute or chronic disease which would retard his recovery from the injury.

Dr. Anderson, an orthopedic specialist, who made more than one physical examination of the claimant, reported after his first examination in November 1955 that the disability was due in part to his injury and in part to his arthritic condition. He again examined the claimant on June 11, 1962 and reported on June 25, 1962 that the claimant complained of pain in his left hip, in his upper spine which extended to his shoulders, in his left shoulder and in his lower back and pelvis, and that the claimant stated that he used crutches most of the time. Dr. Anderson also reported that the claimant walked with a limp of his left lower extremity, that x-ray views of the dorsal spine showed moderate osteoarthritic changes and a narrowing of the eighth dorsal vertebra, and that the claimant was very badly disabled for doing any type of manual labor. In his cross-examination on September 4, 1962, Dr. Anderson stated that in November 1955 when he made his first report he felt that part of the claimant's disability was due to the 1954 injury and part was due to arthritis. When asked if the type of arthritis of the claimant resulted from the injury he answered "I couldn't say about that. I didn't see him until

about a year after he was injured and I do not have the x-rays of his injury."

Dr. Aguilar, after an examination of the claimant, in his report dated January 4, 1962, stated that the claimant still complained of considerable pain in his lumbar region radiating towards his thighs along his sciatic nerve, and that he walked with a decided limp. He expressed the opinion that the claimant was unable to perform any heavy work in the mines and, though he did not indicate whether his condition was due to the injury or his mental outlook, he thought the claimant should be allowed 100% disability.

Dr. Owen examined the claimant on November 24, 1962, and without expressing any opinion as to the cause of his disability, reported that the claimant was totally disabled to perform hard labor.

Dr. Stemmermann, who examined the claimant on November 28, 1962, reported that physical signs indicated lumbo-sacral and left hip joint disease which, from prior x-ray studies, was apparently due to post-traumatic degenerative arthritic changes.

Dr. Hamilton, a general practitioner, who examined the claimant in February 1963, diagnosed the residuals of the injury to the claimant on September 9, 1954 as silicosis; cardiac hypertrophy; traumatic degenerative osteoarthritis of the lumbar spine, left and right hip joints; traumatic neuritis of the left sciatic nerve; atrophy of soft structures of right and left hips and buttocks; and chronic invalidism and asthenia. He expressed the opinion that the claimant suffered a severe crushing injury in the mine accident of September 9, 1954, that at the time of the accident it was impossible to predict the residuals which now exist, that claimant's condition will become worse and that he is totally disabled and unemployable in any capacity.

Dr. Callender, who examined the claimant at the instance of the employer, in a report of his examination of the claimant dated February 16, 1962, stated that the claimant told him that he sustained an injury to his back, hips and left shoulder and that claimant was told that he was badly

bruised through his hips in the mine accident on September 9, 1954, and that the claimant stated that he constantly experiences pain in his back from above the hips which extends into his hips and his left leg to his foot, and his right leg to his knee. The claimant told the doctor that he had no injury prior to his injury in the mine accident. Dr. Callender's diagnosis was that the claimant was suffering from osteoarthritis of the lumbar spine with perhaps some slight evidence of traumatic osteoarthritis between the third and fourth lumbar veterbrae, and that based on his positive physical findings he concluded that the disability of the claimant was approximately 10%. When testifying concerning his report he stated that the claimant had hypertrophic osteoarthritis of the lower spine in both hips which may have been influenced by the injury in increasing the rapidity of the development of such arthritis but that such arthritis was not directly caused by the injury. On cross-examination he stated that the degree of partial disability caused by the injury was approximately 10%, and that his disability resulting from all disabling factors was approximately 20%. He also stated that there was some indication that some traumatic arthritic change had occurred between the third and fourth lumbar vertebrae.

Upon substantially the foregoing medical evidence the appeal board found that the total permanent disability of the claimant resulted from the injury which he suffered on September 9, 1954. Though none of the doctors, except Callender and Hamilton, attempts to determine the exact degree or the extent of the disability which resulted from the injury or the arthritis, the evidence shows that each factor in part contributed to his total permanent disability. Dr. Callender's opinion was that 10% of the disability resulted from the injury and he admitted that the injury could have influenced the arthritis by increasing the rapidity of its development. Though this doctor who examined the claimant at the instance of the employer concluded that the disability resulting from the injury and all other damaging factors was only 20%, the employer in its brief does not deny that the claimant is severely crippled and concedes that he is

now prevented from effectively performing heavy manual labor. It contends that the sole issue is not how much the claimant is disabled but whether the finding of the appeal board that the present arthritic disability of the claimant was directly caused by the injury which he sustained on September 9, 1954, is supported by the evidence. As already indicated, Dr. Hamilton entertained the opinion that the total permanent disability of the claimant was caused by the injury and that the arthritic disability was a traumatic osteo-arthritic change. The claimant did not have arthritis before the injury, and has not suffered any subsequent injury, and the absence of these factors indicates that his present disability was caused by the injury.

As there is a conflict in the evidence as to the cause of the total permanent disability of the claimant and as there is persuasive evidence that it was directly caused by the injury, this Court would not be justified in holding that the finding of the appeal board is not supported by the evidence or is plainly wrong. This Court has consistently held in many cases that in order to reverse a finding of fact by the Workmen's Compensation Appeal Board it must appear from the proof upon which the board acted that the finding in question was plainly wrong. *Tate* v. *State Compensation Director,* 149 W. Va. 51, 138 S. E. 2d 636; *Eady* v. *State Compensation Commissioner,* 148 W. Va. 5, 132 S. E. 2d 642; *Burr* v. *State Compensation Commissioner,* 148 W. Va. 17, 132 S. E. 2d 636; *Jackson* v. *State Compensation Commissioner,* 146 W. Va. 304, 119 S. E. 2d 657; *Morris* v. *State Compensation Commissioner,* 135 W. Va. 425, 64 S. E. 2d 496; *Walk* v. *State Compensation Commissioner,* 134 W. Va. 223, 58 S. E. 2d 791; *Vento* v. *State Compensation Commissioner,* 130 W. Va. 577, 44 S. E. 2d 626; *Stevely* v. *Compensation Commissioner,* 125 W. Va. 308, 24 S. E. 2d 95; *Prince* v. *Compensation Commissioner,* 123 W. Va. 67, 13 S. E. 2d 396; *Burgess* v. *State Compensation Commissioner,* 121 W. Va. 571, 5 S. E. 2d 804; *Moore* v. *Workmen's Compensation Appeal Board,* 118 W. Va. 578, 191 S. E. 292; *Rasmus* v. *Workmen's Compensation Appeal Board,* 117 W. Va. 55, 184 S. E. 250.

In *Vento* v. *State Compensation Commissioner*, 130 W. Va. 577, 44 S. E. 2d 626, this Court said in point 1 of the syllabus that "In order to reverse a finding of fact by the Workmen's Compensation Appeal Board it must appear from the proof upon which the board acted that the finding in question was plainly wrong." In *Stevely* v. *Compensation Commissioner*, 125 W. Va. 308, 24 S. E. 2d 95, this Court held in point 3 of the syllabus that "A decision of the Workmen's Compensation Commissioner, from the evidence before him, and which has been affirmed by the Workmen's Compensation Appeal Board, will not be disturbed by this Court on appeal, if it is supported by any reasonable appraisal of the evidence."

As to the appraisal of the evidence in compensation cases, this Court has repeatedly recognized and applied the liberality rule in the interpretation of evidence in such cases. *Buckalew* v. *State Compensation Director*, 149 W. Va. 239, 140 S. E. 2d 453; *McGeary* v. *State Compensation Director*, 148 W. Va. 436; 135 S. E. 2d 345; *Eady* v. *State Compensation Commissioner*, 148 W. Va. 5, 132 S. E. 2d 642; *Turner* v. *State Compensation Commissioner*, 147 W. Va. 145, 126 S. E. 2d 379; *Williams* v. *State Compensation Commissioner*, 127 W. Va. 78, 31 S. E. 2d 546; *Burgess* v. *State Compensation Commissioner*, 121 W. Va. 571, 5 S. E. 2d 804. Under that rule the evidence in this case is sufficient to justify and sustain the finding of the Workmen's Compensation Appeal Board.

The finding of the appeal board should also be approved and confirmed under the holding of this Court in *Vankirk* v. *State Compensation Commissioner*, 144 W. Va. 447, 108 S. E. 2d 567, and *Pripich* v. *State Compensation Commissioner*, 112 W. Va. 540, 166 S. E. 4. In the *Pripich* case, in which the medical evidence closely resembles but is weaker than the medical evidence in this case, this Court said in point 1 of the syllabus: "Where, in the course of and arising out of his employment, an employee in good health and of strong physique, suffers physical injury which is followed by serious disabilities, competent physicians differing as to whether the disabilities are attributable to the injury, but

only probable or conjectural reasons or causes are assigned by physicians in an effort to explain the disabilities on grounds other than the injury, the presumption should be resolved in favor of the employee rather than against him." In the *Pripich* case one physician testified that the claimant was suffering from hypertrophic arthritis which was not due to his injury and another physician was of the opinion that the claimant's trouble was probably traumatic arthritis. In the opinion this Court said: "If the disabilities cannot with some degree of certainty be attributed to a cause other than the injury, we are of opinion that the conclusion must prevail that the claimant is suffering from progressive results of his injury * * * ."

The contention of the employer that the claimant has not proved that his existing disability is directly attributable to a definite, isolated, fortuitous occurrence in the course of his employment is devoid of merit for the reason that his injury of September 9, 1954, upon which his claim is based, was held to be compensable by the order of the commissioner of May 19, 1955, and for which he was awarded a 10% permanent partial disability by an order of the commissioner of August 2, 1956. That order was affirmed by the Workmen's Compensation Appeal Board by its order of December 17, 1956 which, being final and unappealable, can not be considered or disturbed on this appeal.

The order of the Workmen's Compensation Appeal Board of July 8, 1964, which affirmed the order of the State Compensation Director of February 27, 1964, awarding the claimant total permanent disability as a result of his injury on September 9, 1954, is affirmed.

*Affirmed.*