GIDEON F. SISK

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER
*and* WINDING GULF COALS, INC.

(No. 12842)

Submitted September 3, 1969.    Decided October 14, 1969.

*D. Grove Moler,* for appellant.

*Higgins, Thrift & Mahan, Frank K. Mahan,* for appellees.

CAPLAN, JUDGE:

On this appeal the claimant, Gideon F. Sisk, a former employee of Winding Gulf Coals, Inc., seeks a reversal of a final order of the Workmen's Compensation Appeal Board dated April 30, 1969, wherein the board set aside an award of 10% permanent partial disability and granted one in the amount of 20%. Basically it is the contention of the claimant that, in view of the evidence, the ruling of the board was clearly wrong in not granting him a total permanent disability award.

Gideon Sisk, while employed by Winding Gulf Coals, Inc., was injured during the course of said employment when on November 24, 1961 he was struck on the head by a piece of slate. The claimant filed a claim with the Workmen's Compensation Commissioner on November 27, 1961 and the doctor's report was filed on December 21, 1961, the latter noting, as a diagnosis of the injury, "Severe contusion left frontal area above eye with laceration. Cerebral concussion mild." Subsequently the Workmen's Compensation Commissioner entered an order holding the claim compensable and awarding the claimant $38.00 per week as payment of total temporary disability. After the claimant was examined by several physicians the commissioner, on July 16, 1962, entered an order stating that the claimant had suffered no permanent disability and that there would be no further award.

In 1963, upon timely receipt from the claimant's counsel of a report of Dr. I. B. Anderson and a request to further consider the claim, the commissioner by letter of March 6, 1963 held that a proper showing had been made, reopened the claim and referred the claimant to Dr. E. L. Gage for further examination.

Dr. Gage had examined Mr. Sisk on prior occasions at the instance of the commissioner. On one of those occasions he reported that the claimant's principal complaint

was "blurring of his left eye, dizziness and headaches." Tests were then made to determine whether the claimant had any posttraumatic cerebral syndrome. As a result of these tests Dr. Gage reported, "Except for a slight increase in the cortical markings nothing abnormal is seen in the pneumoencephalogram." He reported to the commissioner that the claimant was nervous and jittery and that following the air encephalogram "he behaved more like a nervous individual than a true posttraumatic cerebral syndrome."

Prior to the commissioner's July 16 ruling stating that there was a finding of no permanent disability, Dr. Gage again examined the claimant. On that occasion he reported to the commissioner that the patient continued to complain a great deal. An x-ray of the cervical spine and lumbosacral spine showed no bone injury. He ended the report by saying "I could not find any evidence of organic residual from injury or disease to explain this patient's multiple complaints."

Upon examining the claimant after the reopening of this claim, Dr. Gage reported that the claimant was still complaining of dizziness and headaches. He revealed that the claimant had told him that he had had a nervous breakdown and had been in St. Albans Sanitarium at Radford, Virginia. He reported that Mr. Sisk was distinctly nervous and jittery and more agitated than when he last saw him. He still could not find any organic residual or evidence to account for this patient's many complaints. On May 9, 1963 Dr. Gage stated that in his opinion "this man certainly does not have more than a 10% permanent partial disability as the result of his injury, this to include any influence which the injury may have had upon his psychological behavior or psychiatric status."

By an order of the commissioner dated May 22, 1963 the claimant was awarded 10% permanent partial disability. The claimant filed a protest and after further hearings the 10% award was affirmed by an order of the

commissioner dated July 16, 1968. Upon appeal of this ruling to the Workmen's Compensation Appeal Board the said order of the commissioner was reversed and set aside and the claimant was granted a 20% permanent partial disability award. It is from this order that the claimant now prosecutes this appeal.

It is the position of the claimant that he is totally and permanently disabled by reason of his psychiatric condition and that the Workmen's Compensation Appeal Board was clearly wrong in awarding only 20% permanent partial disability. Therefore, contends the claimant, the order of said board should be set aside and an award of total permanent disability should be allowed. The employer, appellee, contends also that the board was clearly wrong in its ruling. It asserts that there is no evidence to support the additional 10% and that the ruling of the commissioner, awarding 10% permanent partial disability, should be reinstated.

As noted in the opinion of the appeal board, the record here is "voluminous and confusing." This claimant received a compensable injury on November 24, 1961 and the order of the Workmen's Compensation Appeal Board purporting to finally decide this case was dated April 30, 1969. In this period of almost eight years Gideon Sisk has been examined and reexamined by numerous doctors. Many hearings have been held and multiple medical reports submitted. In these circumstances it is necessary to consider the over-all evidence in order to make a proper determination of the percentage of permanent disability to which the claimant is entitled and to ultimately decide whether the board was right or wrong. If a reasonable appraisal of the evidence supports the ruling of the Workmen's Compensation Appeal Board such ruling will be affirmed. *Stevely* v. *Compensation Commissioner*, 125 W. Va. 308, 24 S. E.2d 95. Conversely, where the evidence as a whole reveals that the finding of the appeal board is clearly wrong the board's ruling will be reversed. *Ramey* v. *State Compensation Commissioner*, 150 W. Va. 402, 146 S. E.2d 579; *Deverick* v. *State*

*Compensation Director,* 150 W. Va. 145, 144 S. E.2d 498; *Buckalew* v. *State Compensation Director,* 149 W. Va. 239, 140 S. E.2d 453.

It is largely undisputed that this claimant has suffered no lasting physical disability as a result of his injury of November 24, 1961. However, it is equally without dispute that he has sustained, as a result of such injury, a psychiatric disability. The evidence in this record reveals a difference of opinion among doctors as to the percentage of such disability, but all concur in the fact that Mr. Sisk is so disabled, at least to some degree.

Dr. W. Fred Richmond related in a letter to the claimant's counsel that Gideon Sisk "suffered a cerebral concussion and has developed a posttraumatic cerebral syndrome of a severe degree, and associated with this a severe psychoneurosis, which to all intents and purposes is completely and totally disabling." Dr. Richmond then suggests a 30% disability award and expresses a hope that this man could with psychiatric therapy and rehabilitation therapy be placed in some occupation other than mining. He concludes, "If not, this man will be a charge of the county for the rest of his life."

At a commission hearing on November 6, 1964, Dr. Richmond reiterated his belief that the greater part of his disability was the post-concussion syndrome and that the claimant was completely and totally disabled. On that occasion Dr. Richmond testified on cross examination as follows: "At the present time he is completely disabled but this does not indicate that there is not a possibility of subsequent rehabilitation outside of the mining industry. I think he is disabled completely as far as mining is concerned and I think to put him back in the mines at the present time would be to court disaster, at least from a psychic view."

Dr. I. B. Anderson, who treated Mr. Sisk shortly after his injury of November 24, 1961, reported that the injury was of such severity that he admitted him to the hospital for observation; that he suffered severe headaches and

severe anxiety reaction; that he had dizzy spells and experienced a "ringing" and "roaring" in both ears; and that he has no reason to disbelieve the claimant nor to believe that he is malingering. Dr. Anderson then added that in 1962 he began to believe that there was some psychiatric basis behind the claimant's disability and still feels that way. He noted, "It is not impossible that this patient may have suffered posttraumatic cephalagia which could possibly have persisted." If this theory is so, Dr. Anderson opined, the claimant is completely disabled so far as working in the mines is concerned.

Dr. Anderson made a very interesting observation in relation to the extensive examinations and treatment undergone by this claimant. He noted that he had referred Mr. Sisk to a "neurosurgeon, a E.E.N.T. specialist, an ophthalmologist, and a psychiatrist." He then observed, "Despite all these consultations and the numerous studies which I have done on this patient, I still have the feeling that somewhere along the line we have missed the boat."

Dr. M. G. MacAulay, a psychiatrist who extensively examined and treated the claimant, testified at a hearing on April 20, 1965. It was his opinion that Mr. Sisk was undergoing an anxiety reaction with associated depression and that this condition appeared to be secondary to the head trauma received in the mining accident in November, 1961. Dr. MacAulay first thought that the claimant was not seriously disabled but, upon further treatment and observation, changed his opinion. He noted that there was little evidence of any improvement and that despite medication and treatment he "was not doing well"; that with the claimant's borderline level of intelligence it was less likely that he would respond to treatment; that his prognosis was poor; that he could not work in a coal mine; and that he believed that the subject injury was the principal cause of Mr. Sisk's condition.

The following significant testimony by Dr. MacAulay appears in the record relative to the claimant's condition:

"Q. It is not something that has existed all of Mr. Sisk's life? A. No, it could not have been, because with this condition Mr. Sisk is incapable of working, and we know that he did work in the mines over a number of years at hard physical labor. Q. A chronic anxiety reaction is not like some other psychiatric conditions which may exist all one's life, but in a dormant state, and then spring up all of a sudden? A. I don't think so. I think almost always there is some precipitating cause for such condition. Q. And you feel that was the case in Mr. Sisk's situation? A. I do."

Dr. W. E. Wilkinson who has engaged in the practice of neuropsychiatry and psychiatry for many years testified on the claimant's behalf. His testimony was in agreement with that of Dr. MacAulay in regard to the claimant's psychiatric disability. He related that it was "pretty clear to me that his trouble came on after the accident." Significantly, Dr. Wilkinson also observed that this claimant had worked regularly prior to the accident and that he would not have been able to do so had this psychiatric condition then existed. He believes that the claimant's condition is severe and that employment in the mines is thereby precluded.

Dr. William B. Rossman, a psychiatrist, testified in relation to the claimant's condition at a hearing on January 23, 1968. He noted that Mr. Sisk had a definite psychiatric problem in that he was suffering from a chronic anxiety reaction. Although he would not state unequivocally that the claimant's problem resulted totally from his injury he felt there was some connection. Dr. Rossman related that Mr. Sisk's psychiatric problem was real and that there was no suggestion or possibility that he was malingering. Throughout his testimony and in his written report, Dr. Rossman indicates that it would be "extremely difficult to motivate this man to work." He strongly implies that the claimant cannot work in the mines, although he says rehabilitation in some other employment may be possible and should be tried.

Only Dr. Gage, to whom we referred earlier in this opinion, does not report that this claimant is unable to return to his employment. This doctor acknowledges the claimant's disability and offers no explanation for it but suggests a 10% permanent partial disability award.

What is revealed by a meaningful appraisal of the evidence compiled over a period of almost eight years? We find that Gideon Sisk, prior to his injury in 1961, was employed at hard labor in a coal mine; that he worked steadily, rarely missing a shift of work; that he was in reasonably good health, physically and mentally; and that by his labors he adequately provided for his sizeable family.

After his injury which consisted of a substantial blow on his head and by reason of which he was hospitalized, he underwent a tangible change. He has worked only a few months since November 24, 1961 and has not worked at all since 1963. While there appears to be no present physical disability he suffers severely from a psychiatric affiliction, which by a great preponderance of the evidence prevents him from engaging in his former employment in the mines. Most of the doctors who have examined him, especially those who have treated him at some length, have related that in their opinion this claimant is totally disabled so far as his working in the coal mining industry is concerned. In addition there is substantial evidence that rehabilitation of this man for any kind of employment would be most difficult. That his prognosis is poor is concurred in by most of the doctors. No one contends or suggests that this claimant is malingering. In fact it is expressed affirmatively in the medical evidence that his disability is real and that he is not malingering.

Mr. Sisk has never worked at any employment other than coal mining. It is undisputed that he has little formal education, in fact being illiterate, and has a borderline low level of intelligence.

It has long been held in this jurisdiction that a disability which cannot with some degree of certainty be attributed to a cause other than the subject injury must be presumed to have resulted from such injury. This was expressed in the first point of the syllabus of *Pripich v. State Compensation Commissioner,* 112 W. Va. 540, 166 S. E. 4, as follows:

> "Where, in the course of and arising out of his employment, an employee in good health and of strong physique, suffers physical injury which is followed by serious disabilities, competent physicians differing as to whether the disabilities are attributable to the injury, but only probable or conjectural reasons or causes are assigned by physicians in an effort to explain the disabilities on grounds other than the injury, the presumptions should be resolved in favor of the employee rather than against him."

In *Vankirk v. State Compensation Commissioner,* 144 W. Va. 447, 108 S. E.2d 567, the Court, following the above principle, adopted the quoted language as its syllabus. See *Dombrosky v. State Compensation Director,* 149 W. Va. 343, 141 S. E.2d 85; *Morris v. State Compensation Commissioner,* 135 W. Va. 425, 64 S. E.2d 496; *Pannell v. State Compensation Commissioner,* 126 W. Va. 725, 30 S. E.2d 129; *Collett v. State Compensation Commissioner,* 116 W. Va. 213, 179 S. E. 657; and *Hall v. State Compensation Commissioner,* 110 W. Va. 551, 159 S. E. 516.

Applying the foregoing principle to the instant case, it is most significant that there is a complete lack of medical evidence which attributes the claimant's psychiatric disability to any cause other than the compensable injury. Dr. Gage, who suggested a 10% permanent partial disability award, reported that he could find no physical reason for the claimant's difficulties. He acknowledged, however, that some disability existed but could not account for its cause. The clear preponderance of the medical evidence attributes the claimant's present condition to his injury. No other cause is shown to exist. In these circumstances it must be presumed that the psychiatric

disability suffered by the claimant is a result of the injury received on November 24, 1961.

There exists in this case a difference of opinion among the doctors relative to the percentage of permanent disability to which the claimant is entitled. Dr. Gage recommended a 10% award; Dr. Rossman recommended an additional 10%; and Dr. Richmond suggested 30%. The other examining physicians made their reports but did not submit any specific percentage. No provisions of the workmen's compensation law give to a physician, whether he be employed by the commissioner or the claimant, the authority to fix the percentage of disability. That is the responsibility and duty of the commissioner and in so evaluating the disability of the claimant it is incumbent upon him to consider the physical findings of the examining physicians and determine therefrom and from all of the other evidence in the case what award, if any, the claimant should receive. *Haines* v. *Workmen's Compensation Commissioner,* 151 W. Va. 152, 150 S. E.2d 883; *McGeary* v. *State Compensation Director,* 148 W. Va. 436, 135 S. E.2d 345; *Kamensky* v. *State Compensation Commissioner,* 148 W. Va. 258, 134 S. E.2d 582.

Concerning the appraisal of the evidence in workmen's compensation cases, this Court has consistently adhered to the liberality rule. While such rule will not be applied so as to take the place of proper and satisfactory proof, it is the duty of the commissioner to construe liberally the evidence in favor of the claimant. *Hosey* v. *Workmen's Compensation Commissioner,* 151 W. Va. 172, 151 S. E.2d 729; *Dombrosky* v. *State Compensation Director,* 149 W. Va. 343, 141 S. E.2d 85; *Justice* v. *State Compensation Director,* 149 W. Va. 216, 140 S. E.2d 424.

It has been generally accepted by this Court that where there is evidence to support the findings of the Workmen's Compensation Appeal Board such findings will not be disturbed on appeal. *Haines* v. *Workmen's Compensation Commissioner,* 151 W. Va. 152, 150 S. E.2d 883; *Dombrosky* v. *State Compensation Director,* 149 W. Va. 343, 141 S. E.

2d 85. However, it has been held with equal force that even though there may be evidence which tends to support such findings, where a reasonable appraisal of all the evidence shows that the appeal board is clearly wrong its order will be reversed and set aside by this Court. *Kennedy* v. *State Compensation Director*, 150 W. Va. 132, 144 S. E.2d 509; *Buckalew* v. *State Compensation Director*, 149 W. Va. 239, 140 S. E.2d 453; *Hayes* v. *State Compensation Director*, 149 W. Va. 220, 140 S. E.2d 443; *McGeary* v. *State Compensation Director*, 148 W. Va. 436, 135 S. E.2d 345.

Evaluating all of the evidence in the instant case, particularly that relating to the claimant's condition prior to and after the injury, and upon consideration of the principles herein enunciated, we are of the opinion that this claimant is totally and permanently disabled by reason of such injury and that he is therefore entitled to an award commensurate with that disability. Therefore, the order of the appeal board is reversed and this case is remanded to the appeal board and to the commissioner for the entry of an award of total permanent disability to this claimant.

*Reversed and remanded.*