WELDON STEWART

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and*

EASTERN ASSOCIATED COAL CORPORATION

(No. 13141)

Submitted January 19, 1972.    Decided February 15, 1972.

*Shaffer, Shaffer & Hall, Harry Gus Shaffer, Jr.,* for appellant.

*George G. Burnette, Jr.,* for appellees.

HAYMOND, JUDGE:

On this appeal the employer, Eastern Associated Coal Corporation, seeks reversal of the final order of the Workmen's Compensation Appeal Board entered May 27, 1971, which affirmed the order of the State Workmen's Compensation Commissioner entered December 2, 1970 which awarded the claimant, Weldon Stewart, total permanent disability benefits payable for life at the rate of $38.00 per week.

The question for decision is whether the total permanent disability award is warranted by the evidence.

On May 13, 1965 the claimant, married and forty-nine years of age at the time of the hearing before the commissioner in 1968, while employed as a loading machine operator in the mine of the employer at Kopperston, Wyoming County, West Virginia, sustained a serious fracture of his left leg when it was caught between the loading machine and a rib of coal in the mine. The claimant was carried from the mine on a stretcher and taken to the Appalachian Reigonal Hospital at Beckley, West Virginia where x-rays showed a compound comminuted fracture of the distal one-third of the left tibia and fibula. He was treated by Doctor C. A. Stevenson, an orthopedic surgeon associated with the Southern West Virginia Clinic. The claimant was confined to the hospital from May 13 to June 29, 1965 and while confined there surgery was performed to reduce the leg fracture and a cast was applied. The claimant returned to the hospital for examination on a monthly basis until March, 1966, when he was again confined and a surgical bone grafting operation was performed. He was again confined to the hospital for a period of nine days in 1968 for treatment of an infection that had developed in his left foot.

The claimant testified that he is unable to move about without the aid of a brace or crutches, that he can not lift anything, that when he walks for two or three hours he has to rest because his leg from the thigh down gives way, and that when he sits his left ankle becomes stiff.

He also testified that he has been unable to work since his injury of May 13, 1965. The only prior injury sustained by the claimant was a fracture of the little toe on his right foot which disabled him for about nine weeks.

The education of the claimant consists of an eighth grade public school education. After leaving the public school he worked with his father in cutting timber. In 1939 he began to work in coal mines where he continued to work until he was inducted into the armed forces in which he served for a period of four years. He has worked for the employer since March 12, 1948. He possesses no skill for any other type of work and the only work that he has engaged in since March, 1948 is heavy work required in the mining of coal.

In January, 1968 the commissioner referred the claimant to Doctor Stallard of Montgomery to determine whether the claimant needed further treatment and if not to ascertain the degree of disability. Doctor Stallard reported that treatment for the injury should consist of amputation of the left leg of the claimant and that he should be paid the statutory award of 45% permanent partial disability for the loss of the leg. Doctor Stevenson, the personal physician of the claimant, recommended that the leg should not be amputated and the claimant has declined to permit the amputation of his leg.

The commissioner originally awarded the claimant 60% permanent partial disability which is the statutory award for loss of a leg at the hip joint. This award was protested by both the employer and the claimant.

Doctors Stallard, Abplanalp, Kessel and Stevenson treated or examined the claimant from time to time and made written reports of his condition. Other doctors made x-rays of the claimant's condition. Doctor Stallard, Doctor Abplanalp reluctantly, and Doctor Kessel recommended that the leg be amputated below the knee and expressed the opinion that claimant's condition would be improved by the amputation of the leg below the knee and a useful artificial replacement fitted for that portion

of the leg. Each of them recommended that the claimant be awarded a 45% permanent partial disability as provided by Subdivision (d), Section 6, Article 4, Chapter 23, Code, 1931, as amended. Doctor Stallard stated that in his present condition the claimant is not able to work at anything. Doctor Abplanalp stated that the claimant has a limp of the left leg, a pelvis tilt to the left, external rotation of the foot, atrophy of the thigh and leg and limitation of knee motion, and reported that the claimant is not able to engage in gainful employment with the leg in its present condition. Doctor Kessel stated that because of the claimant's disabilities it was doubtful that the claimant could return to his former employment. Doctor Stevenson reported that in his opinion the claimant would never be able to return to work as a laborer with the leg in its present condition and that if the leg was amputated he could not return to his former type of work. He also reported that amputation may be followed by infection, that he could not guarantee that the claimant could wear an artificial leg, and that although the claimant has considerable disability, the claimant "is better off with the poor leg that he now has than he would be with any type of a prosthesis" and that it is difficult for him "to see how anyone could advise amputation in this instance although the patient is not fit for labor with the legs present disability."

Upon the foregoing evidence the commissioner set aside the prior award of 60% permanent partial disability and by the order of December 2, 1970, awarded the claimant total permanent disability. By its final order entered May 27, 1971, the Workmen's Compensation Appeal Board, one member dissenting, affirmed the order of the commissioner and in the accompanying opinion said that the evidence was sufficient to entitle the claimant to a total permanent disability award for life.

The employer contends that inasmuch as Doctors Stallard, Abplanalp and Kessel were of the opinion that the disability of the claimant was a 45% permanent partial disability and recommended that he should be given a

permanent partial disability award of 45% and inasmuch as this Court in *Oliver* v. *State Workmen's Compensation Commissioner*, 152 W.Va. 478, 164 S.E.2d 582, cited and relied on by the employer, refused to permit the appeal board to add to or increase a former award of only 45% permanent partial disability, the award of total permanent disability is not supported by the evidence, is plainly wrong and the finding and the order of the Workmen's Compensation Appeal Board should be reversed.

There is no merit in the foregoing contention of the employer.

An examining or treating physician has no power or authority to fix or determine the degree of disability in any compensation case. That is to be determined by the commissioner, formerly the director, and by him alone in the first instance. "It is the prerogative of the workmen's compensation commissioner, not that of the examining physician, to determine the amount of the award, if any, to which the claimant is entitled." Point 2, syllabus, *Sisk* v. *State Workmen's Compensation Commissioner*, 153 W.Va. 461, 170 S.E.2d 20; Point 2, syllabus, *Haines* v. *Workmen's Compensation Commissioner*, 151 W.Va. 152, 150 S.E.2d 883. In *McGeary* v. *State Compensation Director*, 148 W.Va. 436, 135 S.E.2d 345, the opinion contains these statements: "There is no provision in the workmen's compensation law giving a physician or surgeon, even if he be an official examiner for the director, the power or the authority to fix the degree of disability in any case. That is the responsibility and duty of the director alone. Therefore, in evaluating the disability of a claimant it is his duty to examine the physical findings of the examining physicians and determine from that and all of the other evidence in the case what award, if any, claimant should be granted." Here the evidence of the physicians is that the claimant is unable to do any work or to engage in any gainful occupation and that he can not do the only work which he is capable of performing. According to Doctor Abplanalp, the injury of the claimant is not limited to his leg, for the severance of which he would be

entitled to the statutory award of 45% permanent partial disability, but extends to and involves his pelvis and causes a tilting of the pelvis when he stands. It is clear from the medical testimony that the condition of the claimant is worse and more disabling with his leg in its present condition than it would be if the leg were amputated below the knee as recommended by all of the physicians except Doctor Stevenson, the claimant's physician, whose positive opinion is that the leg should not be amputated and that amputation would not improve his condition. In view of the foregoing opinion of his physician the unwillingness of the claimant to permit the amputation of his leg as recommended by the other doctors is not unreasonable but is fully justified. The evidence is also clear that in his present condition the claimant has suffered a loss of earning capacity as a result of the injury which he received on May 13, 1965, which should be taken into consideration in determining the degree of permanent disability. *Kamensky* v. *State Compensation Commissioner*, 148 W.Va. 258, 134 S.E.2d 582; *Walk* v. *State Compensation Commissioner*, 134 W.Va. 223, 58 S.E.2d 791.

The case of *Oliver* v. *State Workmen's Compensation Commissioner*, 152 W.Va. 478, 164 S.E.2d 582 is distinguishable and does not control the decision in this proceeding. In that case the claimant sustained an injury to his left leg below the knee and to his left hand. The medical examining board recommended a permanent partial disability award of 53%, which included 45% for the injury to the leg and 8% for the injury to the hand. The leg was not severed and the claimant, who was unwilling to permit the amputation of his leg, did not appeal the award. Subsequently the claim was reopened upon the application of claimant. Three examining physicians stated that the 53% award was adequate compensation for the injuries of the claimant and a physician in behalf of the claimant who had never previously examined him reported that in his opinion the claimant was totally and permanently disabled. The commissioner, by final order, affirmed his

former order that the claimant had been fully compensated for the disability resulting from his injury. Upon appeal, the Workmen's Compensation Appeal Board reversed the order of the commissioner and remanded the claim for further development. The commissioner again reinstated and affirmed his former ruling that the claimant had been adequately compensated. On appeal from that order the appeal board reversed the order of the commissioner and granted the claimant a total permanent disability award. Upon appeal from that order of the board, this Court held that where a claimant suffers an injury to his leg and is granted the statutory award for its loss by severance, no further award may be given for such leg injury. In the opinion the Court said that the testimony "was to the effect that total disability resulted from the injury to the leg, for which compensation had been paid.", and that "We find, and so hold, that the appeal board was clearly wrong in awarding total permanent disability for the reason that there was no evidentiary showing that the leg injury resulted in disability to any other part of the claimant's body."

Section 6, Article 4, Chapter 23, Code, 1931, as amended by Chapter 160, Acts of the Legislature, Regular Session, 1961, in effect when the claimant was injured, provides:

"(c) If the injury causes permanent disability, the percentage of disability to total disability shall be determined and the award computed and allowed as follows:

"For permanent disability of from one per cent to eighty-four per cent, inclusive, sixty-six and two-thirds per cent of the average weekly earnings for a period to be computed on the basis of four weeks' compensation for each per cent of disability determined.

"For a disability of eighty-five to one hundred per cent, sixty-six and two-thirds per cent of the average weekly earnings during the remainder of life."

Subdivision (g) of the same article and chapter provides: "The percentage of all permanent disabilities other

than those enumerated in subdivisions (c), (d), (e) and (f) of this section shall be determined by the commissioner, and award made in accordance with the provisions of subdivision (c)."

Subdivision (d) of the same article and chapter provides: "If the injury results in the total loss by severance of any of the members named in this subdivision, the percentage of disability shall be determined in accordance with the following table, and award made as provided in subdivision (c) of this section: * * *.

"The loss of leg shall be considered a forty-five percent disability."

As there has been no severance of the leg of the claimant the quoted provision of subdivision (d) has no present application; but the disability of the claimant is determinable and has been determined by the commissioner under the applicable provisions of the statute.

As previously indicated, the evidence in this proceeding shows that claimant sustained injury to a part of his body other than his left leg and that his injury was not limited to the leg as it was in the *Oliver* case, and the evidence is sufficient to justify and sustain the finding of the commissioner and of the appeal board that the claimant was entitled to an award of total permanent disability.

The Workmen's Compensation Appeal Board is a fact finding body, and its rulings on questions of fact will not be reversed or set aside by this Court unless clearly wrong. Point 3, syllabus, *Johnson* v. *State Workmen's Compensation Commissioner*, 155 W.Va. 624, 186 S.E.2d 771; Point 2, syllabus, *Ward* v. *State Workmen's Compensation Commissioner*, 154 W.Va. 454, 176 S.E.2d 592. This Court has uniformly held in many cases that in order to reverse a finding of fact by the Workmen's Compensation Appeal Board it must appear from the proof upon which the board acted that the finding in question was plainly wrong. *Pennington* v. *State Workmen's Compensation Commissioner*,

154 W.Va. 378, 175 S.E.2d 440; *Richardson* v. *State Workmen's Compensation Commissioner,* 153 W.Va. 454, 170 S.E.2d 221; *Partlow* v. *Workmen's Compensation Commissioner,* 150 W.Va. 416, 146 S.E.2d 833; *Dombrosky* v. *State Compensation Director,* 149 W.Va. 343, 141 S.E.2d 85, and the many cases cited in the opinion in that case. In the *Dombrosky* case this Court held in Point 1 of the syllabus that: "In order to reverse a finding of fact by the Workmen's Compensation Appeal Board it must appear from the proof upon which the board acted that the finding in question was plainly wrong."

The order of the Workmen's Compensation Appeal Board which affirmed the order of the commissioner in awarding the claimant total permanent disability is affirmed.

*Affirmed.*