ELDRIDGE SHREWSBURY

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER,
*and*
POCAHONTAS FUEL COMPANY

(No. 13129)

Submitted January 12, 1972.     Decided March 28, 1972.

*Crockett, Tutwiler & Crockett, Charles A. Tutwiler,* for appellant.

*R. L. Theibert,* for appellees.

HAYMOND, JUDGE:

On this appeal granted September 20, 1971 upon the application of the employer, Pocahontas Fuel Company, the employer seeks reversal of the final order of the Workmen's Compensation Appeal Board entered May 27, 1971. By final order entered October 9, 1970, the State Workmen's Compensation Commissioner affirmed the

finding of the Occupational Diseases Medical Board and awarded the claimant, Eldridge Shrewsbury, compensation on a total permanent disability basis carrying payments for life at the rate of $22.00 per week. Upon appeal by the employer to the Workmen's Compensation Appeal Board, the board set aside the total permanent disability award but upheld the commissioner's finding of compensability for the occupational disease and its opinion stated that it "has no difficulty in arriving at the conclusion that the claim is compensable on the basis of the claimant's suffering from pneumoconiosis" but that the record contained no evidence which justified a permanent total disability award. The employer seeks reversal of the order of the appeal board to the extent that such order held the claim to be compensable.

The question for decision is whether the decision of the appeal board that the claim is compensable is warranted by the evidence.

On March 12, 1966, the claimant filed his application for silicosis benefits. The claim was referred to the Silicosis Medical Board which found that the evidence was not sufficient to justify diagnosis of silicosis at any stage. The claimant did not object to the finding and by order entered September 8, 1966, the commissioner affirmed the finding of the board and denied the application of the claimant. There was no appeal from this order and its finality is not questioned on this appeal. The denial of the claim for silicosis benefits does not bar the present claim for benefits for an occupational disease other than silicosis. The doctrine of res judicata is here inapplicable for the reason that silicosis is by the applicable statute a separate occupational disease from the present occupational disease of the claimant for which he claims benefits in this proceeding.

On January 7, 1967, the claimant filed his present application for occupational disease benefits under Section 1, Article 4, Chapter 23, Code, 1931, as amended by Chapter 179 Acts of the Legislature, Regular Session, 1953, the

applicable statute in effect at the time of the claimant's last exposure on February 5, 1965.

The claimant, fifty-five years of age when he testified in 1969, had been employed in various capacities at the same coal mine for a period of twenty-eight years, and was exposed to dust during his employment.

By order entered March 14, 1969, the commissioner made nonmedical findings and referred the claimant to the Occupational Diseases Medical Board which, on June 12, 1969, found the evidence to be insufficient to justify the conclusion that the claimant had suffered an occupational disease. The claimant objected and the board held a brief hearing on the protest of the claimant in Charleston on December 4, 1969. A former member of the board was unavailable for cross-examination and the matter was continued for the purpose of having various x-rays, taken in 1966 and 1969, examined by a radiologist for his interpretation and report. The radiologist to whom the matter was referred was Doctor W. Paul Elkin who examined the claimant and filed a report on March 4, 1970 which referred to films made for the Silicosis Medical Board in 1966 and films made by Beckley Appalachian Regional Hospital in January, 1969, and two other films made in August, 1966, and contained this language: "All of these films showed marked generalized emphysema with secondary flattening of the diaphragms and also showed increased fibrosis throughout both lung fields. There was no definite or conclusive evidence of any nodulation, however the increased fibrosis would make it difficult to exclude the possibility of some slight fine nodulation. We do not have any conclusive evidence of silicosis in view of the absence of nodulation, however, increased fibrosis throughout with generalized emphysema in one with history of exposure or possible exposures, such as many years in the mines, would be presumed to have an occupational pneumoconiosis under the present law terminology."

At a hearing on June 4, 1970, at Charleston, before the Occupational Diseases Medical Board, Doctor Elkin and each of the three board members, Doctors Paul J. Aliff, Magdi Azer and Beatrice H. Kuhn testified. In his testimony, which contains some conflicts and is somewhat equivocal and unsatisfactory from the standpoint of reaching a definite conclusion, Doctor Elkin stated that he diagnosed the disease of the claimant as occupational pneumoconiosis from the 1969 film but on cross-examination he said that he would not presume that the claimant would have occupational pneumoconiosis under the "old law", meaning the statute in effect before the enactment of the present statute in 1969. He also stated that he would not diagnose the ailment of the claimant as silicosis under the old law but that he recognized as a separate disease coal worker's pneumoconiosis and did so for an indefinite period before the "new statute", meaning the 1969 statute, became effective. In answer to a question on cross-examination as to whether the claimant is suffering from silicosis and coal worker's pneumoconiosis, Doctor Elkins said "Well, I tried to answer that very specifically. Under the present timing as of now, I would classify the case as a case of Coal Workers Penumoconiosis with his adequate history; plus fibrosis and Emphysema. This is a of now. It would be pure speculation as to what I would have done n '66. I change my mind every week and not ust every five years."

Doctor Aliff testified to the effect that since the original decision on the application of the claimant for silicosis benefits new laws have been enacted and that though there were no new facts he would "have to assume and I will have to change my position and say that he [meaning the claimant] does have Occupational Pneumoconiosis, Coal Workers Pneumoconiosis."

Doctor Azer testified that for the purpose of making a diagnosis of coal worker's pneumoconiosis, he considered the 1969 x-ray to be of adequate technical quality, that it showed some fibrosis in the upper lungs and some emphysema in the base of both lungs of the claimant and that his

diagnosis of those facts was presumptive and not a "flat" or a "conclusive" diagnosis of the claimant's condition as coal worker's pneumoconiosis.

Doctor Kuhn testified that the medical attitude with respect to the occupational disease of coal worker's pneumoconiosis had changed considerably in recent years and before the enactment of the present law and that regardless of the law she would make a firm diagnosis of the claimant's ailment as coal worker's pneumoconiosis.

The statute in effect at the time of the last exposure of the claimant contains, among others, these provisions:

"For the purposes of this chapter the terms 'injury' and 'personal injury' shall be extended to include silicosis and any other occupational disease as hereinafter defined, * * *"; and that "occupational disease means a disease incurred in the course of and resulting from employment. No ordinary disease of life to which the general public is exposed outside of the employment shall be compensable except when it follows as an incident of occupational disease as defined in this chapter. Except in the case of silicosis, a disease shall be deemed to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances (1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental to the character of the business and not independent of the relation of employer and employee, and (6) that it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though

it need not have been foreseen or expected before its contraction."

The present statute, Section 1, Article 4, Chapter 23, Code, 1931, as amended in 1970 and 1971 provides that the terms "injury" and "personal injury" shall include occupational pneumoconiosis and any other occupational disease, as defined, and defines occupational pneumoconiosis as a disease of the lungs caused by the inhalation of minute particles of dust over a period of time due to causes and conditions arising out of and in the course of the employment. The present statute also provides that "The term 'occupational pneumoconiosis' shall include, but shall not be limited to, such diseases as silicosis, anthracosilicosis, coal worker's pneumoconiosis, commonly known as black lung or miner's asthma, * * *." The present statute is practically identical with the statute in effect at the time of the claimant's last exposure in 1965 in connection with the meaning of an occupational disease, except that it replaces the word "silicosis" with the words "occupational pneumoconiosis", and in providing that the occupational disease shall be deemed to have been incurred as a result of and in the course of the employment.

Though until the enactment of the present statute which declares occupational pneumoconiosis to be an occupational disease and defines its character and extent, there was no statutory designation of coal worker's pneumoconiosis and though Doctors Elkin, Aliff and Azer testified that under the old law, meaning the statute before its enactment in 1969, they did not recognize coal worker's pneumoconiosis as one of the occupational diseases other than silicosis mentioned in the statute in effect at the time of the last exposure of the claimant, it is evident that coal worker's pneumoconiosis was one of the occupational diseases covered by that statute. The testimony of Doctor Kuhn makes this clear for she states that notwithstanding her former contrary medical view, coal worker's pneumoconiosis, regardless of the statute

is an occupational disease. It is evident from her testimony that coal worker's pneumoconiosis, as an occupational disease other than silicosis, was covered by the statute in effect in 1965 when the last exposure of the claimant occurred during his employment.

The medical evidence is sufficient to show that under the statute as it existed before its amendment in 1969 and at the time of the last exposure of the claimant, the claimant was suffering from an occupational disease other than silicosis and to support the ruling of the commissioner, which was upheld by the appeal board, that the instant claim for occupational disease benefits is compensable; and this Court so holds.

"The Workmen's Compensation Appeal Board is a fact finding body, and its rulings on questions of fact will not be reversed or set aside by this Court unless clearly wrong." Point 2, syllabus, *Stewart* v. *State Workmen's Compensation Commissioner*, 155 W.Va. 633, 186 S.E.2d 700; Point 3, syllabus, *Johnson* v. *State Workmen's Compensation Commissioner*, 155 W.Va. 624, 186 S.E.2d 771; Point 2, syllabus, *Ward* v. *State Workmen's Compensation Commissioner*, 154 W.Va. 454, 176 S.E.2d 592.

This Court has uniformly held in many cases that in order to reverse a finding of fact by the Workmen's Compensation Appeal Board it must appear from the proof upon which the board acted that the finding in question was plainly wrong. *Pennington* v. *State Workmen's Compensation Commissioner*, 154 W.Va. 378, 175 S.E.2d 440; *Richardson* v. *State Workmen's Compensation Commissioner*, 153 W.Va. 454, 170 S.E.2d 221; *Partlow* v. *Workmen's Compensation Commissioner*, 150 W.Va. 416, 146 S.E.2d 833; *Dombrosky* v. *State Compensation Director*, 149 W.Va. 343, 141 S.E.2d 85, and the many cases cited in the opinion in the *Dombrosky* case.

In the *Dombrosky* case this Court held in Point 1 of the syllabus, quoting Point 1 of the syllabus in *Vento* v. *State Compensation Commissioner*, 130 W.Va. 577, 44

S.E.2d 626, that "In order to reverse a finding of fact by the Workmen's Compensation Appeal Board it must appear from the proof upon which the board acted that the finding in question was plainly wrong."

The final order of the Workmen's Compensation Appeal Board entered May 27, 1971 which reversed the order of the commissioner to the extent that it awarded the claimant, Eldridge Shrewsbury, compensation on a total permanent disability basis and which upheld the compensability of the claim for occupational disease benefits and remanded the claim to the commissioner to determine the disability, if any, of the claimant, is affirmed; and this claim is remanded to the commissioner with directions to comply with the order of the appeal board.

*Affirmed; remanded with directions.*